**William A. HOLMES and Alyce M. Holmes, his wife, Plaintiffs,**

v.

**SCHNEIDER POWER CORPORATION, Defendant.**

Civ. A. No. 84–1090.

United States District Court, W.D. Pennsylvania.

Feb. 25, 1986.

Joseph M. Ludwig, Pittsburgh, Pa., for plaintiffs.

William P. Getty, Meyer, Unkovic & Scott, Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

This is an employee dismissal action sounding in contract and tort, alleging diversity jurisdiction. The action was brought against defendant, a contractor involved exclusively in the construction of power generating facilities. Plaintiff Holmes was defendant's employee from May 22, 1978 until May 4, 1982 working as a Material Control Supervisor until he was placed on layoff. On June 11, 1982, Holmes filed a complaint with OSHA alleging that a retaliatory discharge had taken place because Holmes had complained to OSHA about welding fumes at the Beaver Valley Power Station project in Shippingsport where he had worked for defendant. On May 5, 1983, Holmes filed a Workmen's Compensation petition for disability due to fume exposure. On May 3, 1984, Holmes and his wife filed this suit. The action is currently before the court on motion by defendant for summary judgment. Evidentiary material has been submitted and the motion has been fully briefed by the parties in support of their respective positions.

## COUNT I—WRONGFUL DISCHARGE

In his complaint, plaintiff first alleges that he was wrongfully discharged in retaliation for his complaints to OSHA about fumes in the work place.[1] Defendant attacks this claim from two angles:

1) Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C.A. § 651, *et seq.*, provides a statutory remedy for Holmes thereby eliminating any common law wrongful discharge cause of action; and

2) Plaintiff has failed to establish or to plead any facts which would indicate that he was discharged in violation of public policy. Because these arguments may be dispositive we will examine them closely.

### a) *Existence of a Statutory Remedy.*

There is no doubt that Section 11(c) of the Occupational Safety and Health Act (OSHA), 29 U.S.C.A. § 660(c) provides a statutory remedy for any employee who is

---

1. Plaintiff alternatively argues in his brief that he was discharged in retaliation for his complaints to OSHA, the Commonwealth, insurance carriers, Stone and Webster, Schneider supervisors, and others (*See* Plaintiff's Counter-Reply to Defendant's Reply, p. 3, and Holmes' Affidavit) in violation of a public policy which can be found in Pennsylvania Workmen's Compensation Act and Pennsylvania Occupational Disease law. This argument is addressed in subsection b).

discharged because of complaints to OSHA about unsafe work conditions.[2]

Plaintiff disputes this and argues alternatively that the existence of § 660(c) should not preclude us from finding a cause of action on his behalf. In support, plaintiff indicates that he made complaint to the Secretary as prescribed by OSHA, that the Secretary investigated and then closed the administrative file. These facts are undisputed. However, plaintiff then characterizes himself as having exhausted his administrative remedies under the act, and as having no statutory remedy if he cannot file suit in this court. Therefore, plaintiff argues that we should find an implied private right of action.

Plaintiff's arguments on this point are somewhat unclear. Plaintiff relies on cases and arguments that deal with two distinct issues as though they were one and the same. One issue is whether this court should find an implied right of action under the OSHA statute as a matter of federal law.[3] It is an entirely separate issue for this court to decide whether Pennsylvania courts would find a common law cause of action in this case, i.e. wrongful discharge in violation of a public policy. We discuss these issues separately.

Plaintiff clearly admits that he has found no Third Circuit case in which the court decides that a private right of action exists under OSHA. Furthermore, the only case which plaintiff cites us to is a Sixth Circuit opinion holding that OSHA *does not* create a private right of action, on facts similar to ours. *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. (1980). We note that other cases have been brought by discharged employees trying to assert a private cause of action based on § 660(c).[4] However, we know of no case which held that § 660(c) did afford a private remedy and we believe that the *Taylor* court correctly decided that no such private right of action should be implied from the OSHA statute.

In addition, we believe that the OSHA statute does specifically provide a statutory remedy for the type of retaliatory discharge alleged by the plaintiff. Granted, this is a limited remedy, providing only for administrative proceedings and suit in federal court which may be brought by the Secretary if the Secretary so elects. The plaintiff has had the benefit of the administrative remedy provided. The Secretary's decision not to bring suit does not deprive plaintiff of his statutory remedy. It is noteworthy that Pennsylvania courts have found a common law action based on the public policy exception *only* in cases where no statutory remedy is available.

**2.** 29 U.S.C.A. § 660(c) reads, in part, as follows:

(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States District Court shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay. (3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection.

**3.** We recognize that plaintiff has not relied on any federal cause of action in its complaint. However, because we believe that the facts alleged are sufficient to support such a claim should we find one, and because of the policy of federal courts allowing liberal amendment, we will consider this argument.

**4.** *See* H. Perritt, Employee Dismissal Law and Practice 53 (1984); *McCarthy v. Bark Peking,* 676 F.2d 42, 27 (2d Cir.1982) (no recovery because administrative remedies not exhausted); *Pavolini v. Bard-Air Corp.,* 645 F.2d 144, 146 n. 3 (2d Cir.1981) (no private right of action either under OSHA or Federal Aviation Act), *Taylor v. Brighton Corp.,* 616 F.2d 256, 259 (6th Cir.1980) (no private right of action); 66 ALR Fed 654; *George v. Aztec Rental Center, Inc.,* 763 F.2d 184, 186–87 (5th Cir.1985).

*Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980); *Wolk v. Saks Fifth Avenue, Inc.,* 728 F.2d 221, 223–24 (3d Cir.1984). We, therefore, find no basis in the complaint to find a wrongful discharge action.

### b) *Existence of a Public Policy Violation.*

■ Because plaintiff has made alternative arguments, we next address the issue of whether Pennsylvania courts would find a common law cause of action in this case. As a federal court sitting in a diversity action, we are reluctant to glibly expand state law. A decision to find a common law cause of action would necessarily rely on a clear state policy or trend signaling the state court's inclination to favor such expansion. *See Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 919 (3d Cir.1982). We examine plaintiff's alternative argument with this in mind.

■ As we understand it, plaintiff's alternative argument advanced in his brief alleges that he was discharged in retaliation for his complaints "to everyone in sight" regarding the hazardous conditions of his work site. State policy militating against such a retaliatory discharge, plaintiff argues, can be found in the Pennsylvania Workmen's Compensation Act, 77 P.S. 1 *et seq.* and Pennsylvania Occupational Disease law.

Plaintiff has found no Pennsylvania case on point but cites us to *Rettinger v. American Can Co.,* 574 F.Supp. 306 (M.D.Pa. 1983) and *Croutier v. Great Atlantic & Pacific Tea Co.,* 121 N.H. 915, 436 A.2d 1140 (1981). We do not believe that either case applies here.

In *Croutier,* a New Hampshire Court permitted the recovery for wrongful discharge in violation of a public policy tenuously premised on duties imposed under OSHA.[5] *Croutier* is based on New Hamp-

shire law which clearly differs from Pennsylvania law. The *Croutier* court specifically rejected the standard requiring a "strong and clear public policy" which Pennsylvania courts have adopted. *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174, 180 (1974); *Rettinger,* 574 F.Supp. at 311. Moreover, because OSHA is a federal law, we do not believe that this legislative scheme in itself provides *any* indication of a Pennsylvania state policy.[6] Thus, *Croutier* is inapplicable here.

In *Rettinger,* a federal court found that a discharge in retaliation for filing a Workmen's Compensation claim stated a cause of action in Pennsylvania. The court there relied heavily on a lower state court decision which had also made this finding. *See Butler v. Negley House, Inc.,* 20 Pa.D & C 3d 543 (1981). *Rettinger* is not controlling here for two reasons. First, it is factually distinguishable. In the case before us, there are no allegations that plaintiff was fired for filing a Workmen's Compensation claim and in fact, it is undisputed that plaintiff's Workmen's Compensation claim was not filed until a year after his discharge. Secondly, *Rettinger* looks for a clear indication of state policy and finds a state court decision directly on point as well as a state legislative scheme which would be undermined by any different result. We have no state court decisions to rely on, and we do not find the policies addressed in Pennsylvania Workmen's Compensation Act and the Pennsylvania Occupational Disease Act to be undermined by the type of discharge alleged here. Thus being unable to detect any clear state policy which would have been violated by plaintiff's discharge we must dismiss count I.

### COUNT II—BREACH OF IMPLIED CONTRACT.

Plaintiff alleges in his complaint that defendant breached an implied contract to

---

**5.** At least one other court has found no common law action based on OSHA. *See Walsh v. Consolidated Freightways,* 278 Or. 347, 563 P.2d 1205 (1977).

**6.** Neither can we find any legislative intent that OSHA be considered the exclusive remedy available under factual circumstances such as those alleged here. Therefore we cannot accept the argument that state laws are preempted.

discharge only for cause based on defendant's custom and practice to discharge only for certain enumerated causes set forth in an Employee Handbook. It is clear, however, from Holmes' affidavit, deposition, and briefs that he is actually relying solely on the Employee Handbook itself, as evidence of defendant's custom, alleging that it was an offer for a unilateral contract on which plaintiff relied in performing as defendant's employee, and that his performance constituted the acceptance and consideration necessary to form a binding contract. The only additional evidentiary material presented by plaintiff as to defendant's custom or practice is a bare statement by Holmes in an affidavit that "[t]he practice within the company has always been to review employees' deficiencies so that they might be corrected. All of my reviews save the last one were quite complimentary . . .".

The Employee Handbook has been provided to the court as part of the evidentiary materials presently before us in support of the summary judgment motion. The provisions on which plaintiff relies read as follows:

(a) Page EPP–4

B. *Discharge*

Causes for termination may include the following:

(1) Unsatisfactory performance.

(2) Insubordination.

(3) Excessive unexcused absence.

(4) Theft of Company property and/or fraud or dishonesty of any sort.

Notice will be given to employees for reasons other than theft, fraud, dishonesty or insubordination. A written memorandum will be placed in employee's file summarizing the notice given to employee.

(b) Page I–1

... The personnel practices have been developed by experience and the continued objective of management to be fair, reasonable and understanding in its employee relations.

Defendant claims that there is no dispute as to any material fact and that it is entitled to summary judgment as a matter of law. In examining the contentions of the parties we accept all facts in a light most favorable to the plaintiff who opposes the summary judgment motion. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It is plaintiff's burden to present some facts from which a reasonable inference could be drawn that a contract existed in fact or should be implied by law.

We must examine Pennsylvania law to see if plaintiff's breach of contract claim is sufficient as a matter of law. It is clear that in the absence of contractual or statutory provisions to the contrary, employers in Pennsylvania are free to discharge an employee for any or no cause. *Cisco v. U.P.S. Inc.*, 328 Pa.Super. 300, 476 A.2d 1340 (1984); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Since no statutory provision applies, we are concerned here only with the contractual claim. Plaintiff relies on *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir.1983) and *Banas v. Matthews International Corp.*, No. 1205 PGH 82 (Pa.Super. Ct.1982) as authority.

Plaintiff argues that *Novosel* stands for the proposition that an employer's policy or custom alleged to create either a contractual or just cause requirement raises a factual matter which should survive a motion to dismiss. Accepting this statement as correct, we nonetheless find this case distinguishable in its procedural posture. We are dealing here not with a motion to dismiss but with a motion for summary judgment. A discovery period has been completed during which both of the parties had the opportunity to uncover all relevant matters. Moreover, both parties have filed evidentiary materials to aid in our decision. There is no dispute over the existence or wording of the Employee Handbook on which plaintiff relies, and we accept as true for purposes of this motion plaintiff's statement regarding the employer's custom of reviewing employee performance. Plaintiff presents no additional evidence of em-

ployer policy or custom, or of an employment contract. We can find no material factual dispute which would preclude a summary judgment determination.

■ Plaintiff further urges, under *Banas*, that a manual published or authorized by an employer and distributed to an employee at will becomes part of the party's employment contract except as to the term (length) of employment. Defendant has called to our attention the fact that the Superior Court of Pennsylvania *en banc* reversed the *Banas* opinion on which plaintiff relies. This reversal appears in an opinion dated December 20, 1985, following rehearing, wherein the Pennsylvania Superior Court reaffirmed the viability of the employment-at-will doctrine in Pennsylvania. This recent *Banas* opinion does seem to control our case by deciding that, in the absence of an express or clearly implied just cause provision, the employment-at-will doctrine applies. *Banas*, No. 1205 PGH. 82, slip. op. at 33 (Pa.Super.Ct.1982). The Employee Handbook in question clearly contains no just cause provision, nor do any of the facts alleged by the plaintiff. For these reasons, we find that plaintiff has failed to bring forth any facts sufficient to state a contractual cause of action under Pennsylvania law. *See also Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 (3d Cir.1984); *Richardson v. Cole Memorial Hospital*, 466 A.2d 1084 (Pa.Super.Ct.1983).

## COUNT III—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under Pennsylvania law, a claim for intentional infliction of emotional distress includes the following elements:

1) extreme and outrageous conduct;

2) the conduct must be intentional or reckless;

3) it must cause emotional distress; and

4) the distress must be severe.

Restatement (Second) of Torts § 46 (1965); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970). Liability has been found

"only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." ... *Curran v. Dural*, 512 F.Supp. 699 (E.D.Pa.1981). Moreover, it is for the court to determine whether a reasonable person could find defendant's conduct to be extreme and outrageous. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979). On this summary judgment motion we must make all reasonable factual inferences in favor of the nonmoving party, and we will grant the motion only if there is no disputed issue of material fact and the defendant is entitled to such judgment as a matter of law. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ In examining plaintiff's complaint we find that Holmes alleges that his firing "under the guise of a layoff" was a "prevarication done with the intent to harm" plaintiffs. We have no doubt that this is insufficient to state a cause of action for intentional infliction of emotional distress. We would not have been aware that it was plaintiff's intention to claim intentional infliction of emotional distress had it not been for the fact that plaintiff says so in his brief.[7]

Since this is a summary judgment motion we must examine all pleadings and facts of record to determine whether a factual issue remains for trial. Although we do not have a stipulation from the parties, a close examination of the evidentiary materials indicates that the following facts are undisputed:

1. There were welding fumes at the job site in question (Defendant's Reply to Plaintiff's Brief in Opposition, p. 13);

2. Defendant knew of the fumes since October 1979 (Exhibit 1 attached to Plaintiff's Affidavit);

3. Plaintiff complained that the welding fumes at the job site made him ill

---

**7.** While statements in a brief are insufficient to oppose a Rule 56 motion, we are mindful of the policy of federal courts allowing liberal amendment under Fed.R.Civ.P. 15.

(Defendant's Reply to Plaintiff's Brief in Opposition, p. 13);

4. Plaintiff first advised defendant that the welding fumes were causing him health problems in about October or November of 1980 (Holmes' Deposition, p. 46);

5. Defendant's agent told Holmes in April 1981 to relocate his office because Holmes was having a problem with welding fumes that were in his office. (Holmes' Deposition, p. 31, lines 2–11);

6. Defendant "did do some things" in response to the air quality concerns. (Holmes' Deposition, pp. 50–52 and Exhibits to Holmes Affidavit);

7. In early February 1982, Holmes went on short-term disability due to his health problems. (Biernat Affidavit, p. 4; Holmes' Deposition, p. 83; Holmes' Affidavit, p. 2);

8. Holmes reported to work on May 3, 1982 after consultation with his physician indicating that he was able to return to work. (Biernat Affidavit, p. 5; Holmes Affidavit, p. 3; Holmes' Deposition, p. 84);

9. In early May 1982, defendant informed Holmes that his position had been eliminated and that he would be laid off (Biernat Affidavit, p. 5; Holmes Affidavit, p. 3, paragraph 7).

Holmes alleges that in actuality the reason for his "layoff" was not due to elimination of his position but was retaliation against him for his complaints about unhealthy conditions. Accepting this as true for purposes of this summary judgment motion, we do not find it sufficient to show outrageous conduct of the sort that would establish a claim for intentional infliction of emotional distress. Holmes' additional contentions regarding defendant's outrageous conduct are specified in paragraphs 21 and 22 of his affidavit. However, these paragraphs clearly present plaintiff's personal *belief*, and paragraph 23 is a conclusory summarization of the prior statements of personal belief. Conclusory statements, and those based on personal belief, conjec-

ture or speculation rather than on personal knowledge are not admissible at trial and are insufficient to raise a factual issue under Fed.R.Civ.P. 56. *See Carey v. Beans*, 500 F.Supp. 580 (E.D.Pa.1980), *aff'd* 659 F.2d 1065 (3d Cir.1981); *Ness v. Marshall*, 660 F.2d 517 (3d Cir.1981).

We have searched the record and examined all of the evidence to determine whether the "beliefs" which plaintiff avers could be considered as inferences drawn from any facts presented. But we find no evidence from which it could be reasonably inferred that defendant deliberately established hazardous working conditions which it then concealed from its employees. Evidence presented by plaintiff himself in the form of Exhibits to his affidavit, as well as affidavits of Biernat and Zielinski which were made upon personal knowledge, show *inter alia* that defendant had taken steps to alleviate the welding fumes on the job, that the fumes were no secret to employees, and that the air quality on the job site in question was found, during the relevant period, to be within OSHA limits, though by no means free of contaminants. We find no contradictory evidence based on personal knowledge.

Plaintiff states that "further discovery will show ...". However plaintiff has been granted an eight monthly discovery period which ran between the filing of the complaint on May 3, 1984 until discovery ended January 1, 1985, and has not produced any evidence sufficient to state this claim. Furthermore, discovery was extended once at the parties' request, but was closed when no further enlargement of time was requested. We do not consider this a persuasive statement, and view it as speculative.

We have examined all of the evidence against the moving party. We do not find that Holmes raised any issue of fact admissible at trial that would support its claim that defendant's acts constitute outrageous conduct. All that plaintiff raises is supposition.

**944**

For these reasons, Count III will be dismissed.

## COUNT IV—LOSS OF CONSORTIUM

This claim on behalf of Holmes' wife relies on Holmes' ability to state a claim on which relief could be granted. Since Holmes' claims have failed, so must his wife's claim. *Murray v. Commercial Union Insurance Co. et al.*, 782 F.2d 432, 437–38 (3d Cir.1986).