1997 OK 120

Gary **GRIFFIN**, Plaintiff,

v.

Mark **MULLINIX**, in his official capacity as Branch Manager of the Federal Reserve Bank of Kansas City, Oklahoma City Branch, & Federal Reserve Branch of Kansas City, Oklahoma City Branch, Defendants.

No. 89138.

Supreme Court of Oklahoma.

Sept. 30, 1997.

Rand C. Eddy, Eddy & Jones, P.C. Oklahoma City, for Plaintiff.

J. Ronald Petrikin, Nancy E. Vaughn, Conner & Winters, Tulsa, Timothy J. Bomhoff Conner & Winters, Oklahoma City, for Defendants.

SIMMS, Justice.

¶ 1 The United States District Court for the Western District of Oklahoma, Tim Leonard, J., certified for the Supreme Court's answer the following question of law, pursuant to 20 O.S.1991 § 1601 et seq.:

¶ 2 Does the "general duty clause" of the Federal Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 654(a)(1) and/or Oklahoma's Occupational Safety and Health Act, 40 O.S.1991 § 401, et seq., either in conjunction or separately, articulate a "clear mandate" of public policy of the State of Oklahoma upon which a plaintiff may base a tort

claim against a private employer for wrongful termination of employment alleging retaliation for protesting or attempting to alter working conditions that the plaintiff believed to be unsafe?

This question is answered in the negative. We find that Oklahoma has not articulated a clear mandate of public policy which confers a private right of action upon which to base a tort claim such as the one Plaintiff asserts in this case.

¶ 3 A terminable-at-will employee brought suit against his former employer for retaliatory discharge, premised upon public policy articulated in the Occupational Safety Health Authority, 29 U.S.C. § 654, and a claim for intentional infliction of emotional distress.

¶ 4 The Plaintiff–Employee was a supervisor in the Protection Department at the Oklahoma City branch of the Defendant bank, a private institution. The Protection Department was responsible for protecting bank personnel and property from accidents, injury, theft and the like.

¶ 5 In the wake of the Oklahoma City bombing, the bank instituted a new security policy, which required every package be checked for suspect devices. Prior to the bombing, packages were checked at random and many low risk deliveries were not opened at all. Plaintiff objected to the new policy, citing equipment and training deficiencies that he believed actually made the new procedure less safe than the original spot check method. Plaintiff expressed his concerns to the bank's Protection Department Head, but the policy was not changed.

¶ 6 In an effort to illustrate his point, Plaintiff with some aid from co-workers constructed a replica of a low risk package and rigged it with an alarm which would sound when opened. Plaintiff apparently intended this "experiment" to demonstrate that other bank personnel were better equipped to recognize these packages and direct security to those which were suspicious.

¶ 7 Plaintiff gave the package to the Protection Department Head at a May 30, 1995 security meeting. The supervisor opened the package during the meeting and it sounded as planned, frightening and embarrassing the supervisor. Plaintiff was terminated several days later.

¶ 8 Plaintiff apparently made no effort to contact the Department of Labor or institute an OSHA complaint while still employed by Defendant. However, after his termination Plaintiff contacted the Department of Labor and filed an OSHA complaint. The Department of Labor determined there was insufficient evidence to support the claim, due to failure to file a safety complaint prior to his termination, and Plaintiff did not appeal this decision.

¶ 9 This Court recognized a narrow remedy and exception to the employment-at-will doctrine in *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24, for those employees "discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Id.* at 29. *Burk* itself underscored the narrow scope of the exception it created and the necessity for that cautious approach still applies, "in light of the vague meaning of ... public policy" and the legislature's primary role in formulating it. *See Burk* 770 P.2d at 29.

¶ 10 The clear mandate of public policy required by *Burk* must be "articulated by constitutional, statutory or decisional law." *Burk*, 770 P.2d at 28. Plaintiff asserts that OSHA 29 U.S.C. § 654 and Oklahoma's own Occupational Health and Safety Standards Act, 40 O.S.1991 § 401 et seq. [hereinafter *the Act or the Oklahoma Act* ] provide the articulated public policy upon which to base his retaliatory discharge claim.

¶ 11 Examining first Oklahoma's Occupational Safety & Health Standards Act, we note that the Oklahoma legislature has articulated a public policy in 40 O.S.1991 § 413:

¶ 12 The following is declared to be the public policy of the state:

Occupational accidents produce economic and social loss, impair productivity and retard the advancement of standards of living. Both humane and economic considerations recommend the establishment and implementation of effective injury control measures. A unified, continuing, professional effort is required. A dynamic pro-

gram of health and safety education and training is the best-known solution to the control of occupational accidents.

However, just as significantly this Court acknowledges that in 1984 the state legislature fundamentally changed the existing Occupational Safety & Health Standards Act, removing private employers from the definition of employer under the Act. While the public policy language articulated in § 413 remained unchanged in the post–1984 Act, the legislature's decision to limit application of the Act to public employers limited the entire Occupational Safety & Health Standards Act, including the public policy statement. Therefore, the post–1984 public policy statement must be viewed in light of the more restricted scope of the Act itself. We find that an Act which at one time applied broadly to all employers and now applies to public employers only is not an adequate basis upon which to premise the private tort action of a private employee.

¶ 13 In *Washington v. Union Carbide Corp.*, 870 F.2d 957, 962–64 (4th Cir.1989), the Fourth Circuit Court of Appeals engaged in a strikingly similar analysis to the one required in the instant case. The plaintiff in *Washington* asserted a private cause of action for retaliatory discharge, using West Virginia's Occupational Safety & Health Act as the public policy basis for his claim. The Fourth Circuit noted that the West Virginia Occupational Safety & Health Act only applied to public employers, like the corresponding Oklahoma Act, and determined that under West Virginia law the plaintiff could not assert a valid private cause of action premised on the West Virginia statute. *Washington*, 870 F.2d at 962; W.Va.Code §§ 21–3A–2(b)–(c), 21–3A–13(b).

¶ 14 Plaintiff, in the instant case, contends because the Oklahoma Act still has some limited application to the private employer, *see* 40 O.S.1991 § 414, that the public policy statement and the Act as a whole can serve as the basis for his tortious retaliatory discharge claim. We are unpersuaded by this argument.

¶ 15 Section 414 refers to the consultation program available to the private employer. It is very limited in its scope, prohibiting the Labor Commission from reporting any information with regard to the safety and health conditions of the private workplace except where conditions of "imminent danger" exist. 40 O.S.1991 § 414(E).

¶ 16 In addition, the private employer must initiate consultation in writing and the Department of Labor acts only in response to such requests. Section 414 clearly shows the legislature's intent to enforce the provisions of the Occupational Safety & Health Standards Act only against the public employer, except in the most extreme circumstances when the private workplace poses "imminent danger" to the employees. We find § 414, which takes great effort to restrict Department of Labor oversight of the private employer under Oklahoma's Occupational Safety & Health Standards Act, cannot support Plaintiff's *Burk* action.

¶ 17 With regard to the use of the federal OSHA statute as a basis for a private right of action in tort, we are persuaded by Defendant's argument and analysis with regard to *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir.1996). Defendant asserts, citing *McKenzie*, that a federal statute cannot serve as an articulation of Oklahoma public policy, absent a specific Oklahoma decision, statute or constitutional provision. *Accord: List v. Anchor Paint Mfg. Co.*, 1996 OK 1, 910 P.2d 1011. We agree.

¶ 18 The Oklahoma Legislature, not this Court or Congress, is primarily vested with the responsibility to declare the public policy of this state. *See City of Anadarko v. Fraternal Order of Police, Lodge 118*, 934 P.2d 328, 331 (Okla.1997) (In a case involving the constitutionality of binding interest arbitration as to collective bargaining agreements, this Court said, "[i]t is the duty of the Legislature to make the public policy for Oklahoma."); *In re Anderson*, 932 P.2d 1110, 1115 (Okla.1996) (In a case involving the scope of allowable bankruptcy exemptions, this Court said that it "does not sit as a council of revision, empowered to rewrite legislation in accord with its own conception of prudent public policy."); *City of Bethany v. Public Employees Relations Bd. Of State of Oklahoma*, 1995 OK 99, 904 P.2d 604, 612

("In the absence of specific guidance in the Oklahoma Constitution, it is the Legislature, and not this Court, which is vested with responsibility for declaring the public policy of this state."); *Spaulding v. State ex rel. Dep't of Transp.*, 1980 OK 145, 618 P.2d 397, 398 (This Court said that any changes in the public policy of governmental immunity would need to come from the legislature and not the Court.); *State ex rel. Oklahoma Tax Comm'n v. Mourer*, 596 P.2d 882, 887 (Okla. 1979) (In a settlement of title action, this Court said the "legislature was vested with authority to establish public policy and address political disputes[.]"). Similarly, in *Washington v. Union Carbide Corp.*, 870 F.2d 957, 963 (4th Cir.1989), the Fourth Circuit acknowledged the deference afforded the "West Virginia legislature as the primary organ of public policy in the state."

¶ 19 The plaintiff in *McKenzie* asserted a *Burk* cause of action, relying upon the federal Fair Labor Standards Act [F.L.S.A.] for the necessary articulation of Oklahoma public policy in support of her claim. *Id.* at 1481. The Tenth Circuit found that plaintiff's one noted reference to overtime pay in Oklahoma's statutes was not sufficient to support an "established and well-defined [Oklahoma] public policy[.]" *Id.* at 1488. The Tenth Circuit further noted that when Oklahoma adopted the federal standards for minimum wages, it did not adopt the standards with regard to maximum hours and overtime. *Id.* Ultimately, we find the federal OSHA statute, in itself, does not provide the "well-defined" or "clear and compelling" public policy so as to allow Plaintiff a private right of action in tort against his private employer.

¶ 20 The primary arbiter of Oklahoma public policy, the Oklahoma legislature, has not established the necessary "well-defined" or "clear and compelling" public policy that is required in making an exception to the employment-at-will doctrine. *Burk*, 770 P.2d at 29.

¶ 21 We reiterate the need to "tightly circumscribe" public policy exceptions to the employment–at–will doctrine and not create causes of action in an effort to create policy outside the legislative channels charged with that responsibility.

¶ 22 For the reasons herein stated, we answer the certified question in the negative, because no Oklahoma articulation of public policy exists with regard to the private employer under the Oklahoma Occupational Safety & Health Standards Act and the federal statute, in itself, does not stand as a statement of Oklahoma public policy.

¶ 23 Plaintiff may not base a private tort claim against his private employer premised upon either the federal OSHA statute, Oklahoma's Act or the two in conjunction with one another.

CERTIFIED QUESTION ANSWERED.

SUMMERS, V.C.J., HODGES, LAVENDER, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

KAUGER, C.J., and OPALA, J., concur in result.