750 A.2d 283

**Mary McLAUGHLIN, Appellant,**

v.

**GASTROINTESTINAL SPECIALISTS, INC., Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1999.

Decided April 18, 2000.

Nancy D. Wasser, Philadelphia, Leigh A. Jerner, for Mary McLaughlin.

Theodore A. Schwartz, Glenn M. Campbell, Leonard A. Windish, Philadelphia, for Gastrointestinal Specialists, Inc.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NEWMAN, Justice.

■ In this case, we question whether the Superior Court properly upheld the decision of the trial court to sustain preliminary objections and to dismiss a cause of action for common law wrongful discharge. We affirm the Superior Court because Mary McLaughlin (Appellant) can not state a claim for wrongful discharge solely based upon an alleged retaliatory termination of her employment in violation of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651, 660(c) (OSHA).

## PROCEDURAL HISTORY

Appellant avers that her former employer, Gastrointestinal Specialists, Inc. ("Employer"), fired her from her position as an office manager because she made safety complaints related to Employer's use of a chemical called gluteraldehyde. Appellant alleges that OSHA has designated gluteraldehyde as a toxic, highly noxious solution to be used only in an open, well-

ventilated area and that in Employer's office, the gluteraldehyde was stored in a small closet totally lacking in ventilation. As a result, a strong, noxious odor was emitted and toxic vapors were released whenever the closet door was opened, causing Appellant to suffer from migraine headaches, nausea, fatigue, shortness of breath and dizziness.

In September of 1995, Appellant notified Employer's practice manager (manager) of her concerns regarding the use of gluteraldehyde, but she claims that no action was taken. At the end of September, Appellant learned of the dangers of gluteraldehyde and, apparently without Employer's knowledge, she obtained a sample of the air in the room in which Employer stored the chemical and sent it to a testing laboratory. The laboratory concluded in a document sent to Appellant that the gluteraldehyde was well more than OSHA's maximum exposure limit.[1] After receiving this report, Appellant again complained to the manager, who Appellant alleges told her to keep quiet because Employer feared that other employees would file workers' compensation claims, and that a "makeshift construct" would be built to remedy the problem. Appellant informed the manager that a makeshift construct would not suffice.

On October 27, 1995, soon after this last interaction between Appellant and her manager, Employer fired Appellant. Appellant claims that Employer told her that she would receive her wages for the week ending October 27, 1995, as well as two weeks wages as severance pay. On December 28, 1995, Appellant filed the instant action against Employer.[2] On January 23, 1996 Employer filed preliminary objections seek-

1. Appellant attached to her complaint a copy of a Nevin Laboratories "Auto–Record Analysis Report" which indicated a concentration of 0.51 ppm ... The report stated that the "OSHA maximum exposure limit is 0.2 ppm ... The level measured is above the 0.2 ppm limit. Level can be lowered by a modification in work procedure and by improved ventilation...."

2. It is important to note that in Appellant's count that averred wrongful discharge, she did not articulate or identify any particular public policy that was contravened. She merely stated that Employer "terminated [Appellant] because of her good faith report and her stated concerns regarding continued exposure to Gluteraldehyde and the unsafe use and

ing dismissal of the Complaint for a number of reasons, including that Appellant had not set forth a legal cause of action in any of the Counts of the Complaint and that Pennsylvania's Workers' Compensation Act (the WCA) barred the matter. On May 14, 1996, the trial court entered an order dismissing Appellant's Complaint, with leave to file an action pursuant to the WCA. On June 7, 1996 Appellant filed a timely Notice of Appeal, and on June 14, 1996 the trial court directed Appellant to file a Statement of Matters Complained of pursuant to Pa. R.App. P. 1925.[3]

On September 20, 1996 the trial court filed an Opinion in this matter setting forth that the Complaint was dismissed because, pursuant to *Poyser v. Newman & Company, Inc.*, 514 Pa. 32, 522 A.2d 548 (1987), the exclusivity provisions of the WCA barred Appellant's Complaint. On June 10, 1997, the Superior Court reversed in part and affirmed in part the decision of the trial court. Specifically, the Superior Court held that the Count of Appellant's Complaint that alleged a violation of the Pennsylvania Wage Collection Act, 43 P.S. § 260.2a, (failure to pay wages) did set forth a cause of action and should have proceeded beyond the preliminary objection stage. For this reason, the Superior Court thus reversed the holding of the trial court. However, the Superior Court affirmed the trial court on the dismissal of the remaining counts of the Complaint, which alleged that Appellant was wrongfully terminated and that Appellant was entitled to punitive damages. In so holding, the Superior Court determined that Appellant did not set forth a claim for wrongful discharge because Appellant had not articulated a violation of public policy given that Appellant had made only internal safety complaints and did not lodge a complaint with OSHA.[4]

storage of this chemical." (R.11a). She then concluded that this termination was "contrary to public policy." (*Id.*). In this count of her Complaint, Appellant did not specifically refer to any particular statute or policy of this Commonwealth that Employer contravened.

3. This statement is not included in the certified record and therefore it appears that Appellant failed to file such a document.

4. It is important to note that Appellant argued to the Superior Court only that the public policy that was violated was that her termination

Thus, while noting that the exclusivity provisions of the WCA did not bar a claim for wrongful discharge, the Superior Court affirmed the trial court. On Plaintiff's claim for punitive damages, Superior Court affirmed the finding of the trial court that exclusivity provisions of the WCA barred this claim.[5] We granted allocatur in regards to the claim for wrongful discharge only.

This appeal raises two issues: Whether the Superior Court erred in finding that OSHA's anti-retaliation provision was not a basis for Appellant's wrongful discharge claim and whether the state court had jurisdiction to decide this matter. For the reasons that follow, we affirm the Superior Court. We stress that Appellant has raised in her statement of issues to this Court *only* whether federal *OSHA* prohibits retaliatory discharge and whether a Pennsylvania court has jurisdiction to decide a matter arising from *federal* OSHA. We have not been presented with any issue of public policy arising from a Pennsylvania statute governing Health and Safety, and we are therefore constrained to decide only those issues presented to us. Pa. R.A.P. 2116 ("rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby"); *See also, Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975)(an appellate court should not consider an issue not presented by the parties, but "instead resolve the appeal on the basis of the issues raised by the parties.") [6]

violated OSHA, not any Pennsylvania statute governing Health and Safety.

5. Because of the decision of the Superior Court, only Count I, the claim pursuant to the WPCL remained.

6. We note that we are distressed that the dissent feels free to create a public policy tort ostensibly arising from the "Pennsylvania Health and Safety Act" where neither of the parties appears to have addressed or raised this issue of first impression in either the trial court or Superior Court, and certainly did not marshal this argument in the briefs before this Court. Indeed, the Appellant quite clearly argues that her claim for wrongful termination arises because it violated federal OSHA and its attendant regulations. The brief is silent as to any supposed violation of the Pennsylvania Act, and this Court should refrain from deciding a matter on a basis that was not raised, briefed or argued in

## ANALYSIS

This Commonwealth has reiterated since the turn of the last century that an employer may terminate an employee for any reason, unless restrained by contract. *E.g., Henry v. Pittsburgh & Lake Erie Railroad Co.,* 139 Pa. 289, 21 A. 157 (1891). This remained the untouched law of the employment relation until our decision in *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974) stated that an employee *may* bring a non-statutory cause of action against an employer for that employee's termination, under very limited exception.[7] Although we ultimately found that Geary did not set forth a cause of action, in dicta we left open the possibility of a wrongful discharge claim in circumstances where a termination of an employee would violate a "clear mandate of public policy." 319 A.2d at 180.

Following the *Geary* Opinion in 1974, many of our sister jurisdictions expanded the law as to when an employee could sue the employer. *See, e.g.,* Mark E. Brossman, Laurie C. Malkin, *Beyond the Implied Contract: The Public Policy Exception, The Implied Covenant of Good Faith and Fair Dealing, and other Limitations on an Employer's Discretion in the At-will Setting,* 600 PLI/Lit 587 (March 1999).[8] However, this Court remained silent. Indeed, we did not revisit the area until fifteen years later in *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989) and proceeded by *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990) the following year. This Court reaffirmed the position that the employment relationship is at-will. We stated that there is

any proceeding, particularly where it is far from clear that the Pennsylvania act cited by the dissent is applicable to the facts of the matter before us.

7. Indeed, in *Geary*, we stated that "[n]o court in this Commonwealth has ever recognized a non-statutory cause of action for an employer's termination of an at-will employment relationship." 319 A.2d at 175.

8. For example, New Hampshire has allowed a wrongful discharge claim if the employer's motive is in "bad faith." *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549, 551 (1974).

no common law cause of action against an employer for termination of an at-will employment relationship. Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy. *Paul*, 569 A.2d at 348 (citing *Clay* ). We then determined in both of these cases that no cause of action for wrongful discharge had been stated, although we recognized that a claim could be brought in Pennsylvania. We did not again address the issue of wrongful termination of an employee until our recent decision in *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998). In *Shick*, we continued to recognize that the exception to the employment at-will rule should be applied in only the narrowest of circumstances. However, we determined that an employer who fires an employee in retaliation for bringing a workers' compensation claim violates the public policy of this Commonwealth and can be liable at common law for wrongful discharge.

▆▆▆ From these cases, we glean that, as a general proposition, the presumption of all non-contractual employment relations is that it is *at-will* and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth. With this background in mind, we turn to the specific arguments of the Appellant.

Appellant contends that the Superior Court erred because OSHA's anti-retaliation provisions are implicated regardless of whether she complained to the agency or her Employer because the agency has promulgated administrative regulations that prohibit Employer from firing her. 29 C.F.R. § 1977.9.[9] She then concludes that OSHA's regulations indi-

9. OSHA regulation 1977.9 provides as follows:

(a) Discharge of, or discrimination against, an employee because the employee has filed "any complaint * * * under or related to this Act * * * " is prohibited by section 11(c). An example of a complaint made "under" the Act would be an employee request for inspection

cate that an Employee's complaints to an employer are protected activity pursuant to the anti-retaliation provisions of OSHA, therefore, she has stated a claim for a wrongful discharge pursuant to the law of this Commonwealth. We reject Appellant's arguments. Further, we do not believe that in her Complaint, or in her arguments to our courts, she has articulated that her termination threatens a clear and substantial public policy in this Commonwealth.[10] Therefore, as a matter of law, she could not overcome the presumption that Employer was free to fire her at will.

 Our previous cases in this arena have not directly addressed the issue of what constitutes "public policy," but we have stated in cases outside of the wrongful termination context that "public policy is to be ascertained by reference to the laws and legal precedents and not from supposed public interest." *Shick*, 716 A.2d at 1237, quoting *Hall v. Amica Mutual Insurance Company*, 538 Pa. 337, 648 A.2d 755, 760 (1994). Implicit in the previous determinations of this Court

pursuant to section 8(f). However, this would not be the only type of complaint protected by section 11(c). The range of complaints "related to" the Act is commensurate with the broad remedial purposes of this legislation and the sweeping scope of its application, which entails the full extent of the commerce power. (See Cong. Rec., vol. 116 p. P. 42206 Dec. 17, 1970).

(b) Complaints registered with other Federal agencies which have the authority to regulate or investigate occupational safety and health conditions are complaints "related to" this Act. Likewise, complaints made to State or local agencies regarding occupational safety and health conditions would be "related to" the Act. Such complaints, however, must relate to conditions at the workplace, as distinguished from complaints touching only upon general public safety and health.

(c) Further, the salutary principles of the Act would be seriously undermined if employees were discouraged from lodging complaints about occupational safety and health matters with their employers. (Section 2(1), (2), and (3)). Such complaints to employers, if made in good faith, therefore would be related to the Act, and an employee would be protected against discharge or discrimination caused by a complaint to the employer.

10. Appellant also argues that her termination contravened the policy of the WCA because she was fired so that other employees would not file claims. She did not raise this in her Complaint or in her response to preliminary objections so we will not consider this issue for the first time on appeal.

is that we declare the public policy of this Commonwealth by examining the precedent within Pennsylvania, looking to our own Constitution, court decisions and statutes promulgated by our legislature. See the cases of *Mamlin v. Genoe*, 340 Pa. 320, 17 A.2d 407 (1941), *Lurie v. Republican Alliance*, 412 Pa. 61, 192 A.2d 367 (1963), and *Hall v. Amica Mutual Insurance Company*, 538 Pa. 337, 648 A.2d 755 (1994) for a general discussion of sources of public policy.

■ However, in the proceedings below, the Superior Court implied that an Employer's termination of an employee in violation of a federal statute was against the public policy of this Commonwealth. Appellant urges us to adopt this reasoning, but refers us to no statute, constitutional premise, or decision from this Court to support the proposition that federal administrative regulations, standing alone, can comprise the public policy of this Commonwealth. Moreover, Appellant has not shown how her discharge undermines any particular public interest of this Commonwealth. At most, she made an internal complaint to her employer, and not to any public agency within the Commonwealth. She points to no Pennsylvania statutory scheme that her discharge would undermine. We believe that it is of no moment that federal regulations *may* provide administrative protection to employees who make safety violations to their employers unless of course the employee is able to articulate a particular policy within the Commonwealth that is threatened.

This is not a case in which the employee avers that she made a complaint to a Commonwealth agency, as existed in *Shick*, and was fired in retaliation. Such a case implicates the policy of the Commonwealth because it thwarts the administration of a Commonwealth agency and undermines the statutory obligations of the employer and the employee, which a Pennsylvania statute governs. Here, however, Appellant has not shown any policy of this Commonwealth that is violated, and has not established how a private report to an employer would undermine the workings of any Commonwealth agency

or any statutory mechanism within the Commonwealth.[11] Indeed, in *Geary, supra,* this Court refused to accept the premise that an employer, who might have terminated an employee in retaliation for making internal reports regarding the safety of a product, threatened the public policy of this Commonwealth to such an extent that it outweighed the presumption of at-will employment.

Accordingly, we hold that in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest. The Plaintiff in some way must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth. In cases like *Shick* there is no question that the public interest and policy of this Commonwealth were at stake, for if we allowed an employer to discharge an employee for filing a complaint with a Commonwealth agency such as the Workers' Compensation Appeal Board, we impact the rights of that employee and the public by undermining the very purposes of a statute of this Commonwealth. This is not the case here.

We recognize that the Superior Court and some federal courts have assumed by implication that sole reference to federal statutes could form the basis for a claim for wrongful discharge in violation of the public policy of this Commonwealth. In *Field v. Philadelphia Electric Company,* 388 Pa.Super. 400, 565 A.2d 1170 (1989)[12] and *Sorge v. Wright's*

11. *See, e.g., Fox v. MCI Communications Corp.,* 931 P.2d 857 (Utah 1997) where the Supreme Court of Utah held that a report to an employer, rather than a public agency, could not support a wrongful discharge claim that employee was terminated for reporting possible criminal conduct. The private report did not give rise to violation of clear and substantial public policy because the plaintiff did not aver that any customers or the public was at potential at risk of harm. At stake were private interests and not public ones.

12. In *Field,* the Superior Court determined that the federal Energy Reorganization Act, 42 U.S.C. § 5851 did not preempt a state law claim for wrongful discharge and that the existence of statutory remedies available under that act did not preclude a common law action. Thus,

*Knitwear Corp.,* 832 F.Supp. 118, 121 (E.D.Pa.1993)[13] the courts indeed hold that the public policy set forth in a federal statute, including OSHA, announced a clear and significant policy of Pennsylvania.[14] Hence, in those cases an employee could bring a claim for wrongful discharge based on that federal statute. In addition, some state jurisdictions have held that the public policy of the state could be found within the OSHA provisions prohibiting a retaliatory discharge for filing an OSHA complaint. Also, in *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 677 N.E.2d 308 (1997) the highest court in Ohio found that OSHA could form the basis for a wrongful discharge claim. However, this view is not uniform.

In *Holmes v. Schneider Power Corporation,* 628 F.Supp. 937 (W.D.Pa.1986), *aff'd,* 806 F.2d 252 (3d Cir.1986)[15] the federal district court rejected the argument that a state common law claim for wrongful discharge could be made by simply relying upon OSHA. In so rejecting such an argument, the court stated:

> the plaintiff could state a claim for his discharge for his report of safety violations to the federal Nuclear Regulatory Commission. We note that the issues in *Field* are distinct from the one we confront here, that is whether sole reference to a violation of federal law, without more, can announce the public policy of this Commonwealth for purposes of stating a claim for wrongful discharge.

13. In *Sorge,* relying on *Kilpatrick,* the federal district court specifically found that "public policies upon which wrongful discharge claims may be based can have their source in federal as well as state law." 832 F.Supp. at 119. Thus, the court allowed the plaintiff to proceed on a claim for wrongful discharge based upon OSHA.

14. We note that Appellant relies upon *Kilpatrick v. Delaware County S.P.C.A.,* 632 F.Supp. 542, 545 (E.D.Pa.1986) to support the contention that federal law can announce the policy of this Commonwealth. However, it is significant that in *Kilpatrick,* the plaintiff appears to have made her complaints to a Commonwealth agency. Thus, to this extent, Kilpatrick is inapposite.

15. In *Holmes,* the Plaintiff made a safety violation to the Secretary as set forth in Section 660(c) because of fumes in the work place. He was discharged soon thereafter, and attempted to bring a private cause of action pursuant to OSHA (rather than an administrative action) and also made a common law claim for wrongful termination.

because OSHA is a federal law, we do not believe that this legislative scheme in itself provides any indication of a Pennsylvania state policy.

*Holmes* reasoned that because the plaintiff could not formulate any state statute or court decision that would be implicated, undermined, or violated because of his termination for reporting safety violations, the Plaintiff had not stated a clear mandate of public policy and the court dismissed the wrongful discharge claim. *Id.* at 940.

Likewise, in *Griffin v. Mullinix*, 947 P.2d 177 (Ok.1997) the Supreme Court of Oklahoma rejected the argument that the "general duty clause" of federal OSHA (this is not to be confused with Oklahoma state's OSHA) articulated a clear mandate of the public policy of the State of Oklahoma on which an employee could base a tort claim for wrongful termination of employment. In *Griffin v. Mullinix*, Mr. Griffin was a supervisor at a bank and expressed his concerns regarding safety issues to the bank management, but the employer's policy did not change. Mr. Griffin was then discharged from his employment. Following that termination Mr. Griffin filed an OSHA complaint and after that filed a claim in federal district court, with a state law claim for wrongful discharge. The district court then certified the question to the Oklahoma Supreme Court concerning whether OSHA could form the basis of public policy to support a claim for wrongful discharge under the law of Oklahoma. In rejecting the argument that federal OSHA could announce the public policy of the state, that Court answered in the negative

because no Oklahoma articulation of public policy exists with regard to the private employer under the [state OSHA statute] and the federal statute, in itself, does not stand as a statement of Oklahoma public policy.

*Id.*, 947 P.2d at 180. We find the cases of *Holmes* and *Griffin* persuasive.

The contrary view that Appellant proposes would essentially allow a plaintiff to reformulate a federal administrative scheme into a state private cause of action. This would then

entitle a plaintiff to overcome the presumption of at-will employment and to recover compensatory damages in a court forum within this Commonwealth even if, as the case is here, the federal scheme provides for an administrative forum. We believe that it is a mistake to baldly point to a federal statute or administrative regulation and, without more, proclaim this as the public policy of the Commonwealth, such that every violation of any federal code, or statute becomes the basis for seeking a common law remedy against an employer.

 As our previous jurisprudence has shown, this Court has steadfastly resisted any attempt to weaken the presumption of at-will employment in this Commonwealth. If it becomes the law that an employee may bring a wrongful discharge claim pursuant to the "public policy" exception to the at-will employment doctrine merely by restating a private cause of action for the violation of some federal regulation, the exception would soon swallow the rule. While, of course, this Commonwealth can not enact laws that contravene federal law, we are not required to override our longstanding policy regarding common law at-will employment and thus provide a common law remedy for wrongful discharge simply because Congress provides a federal statutory remedy to be brought in a federal forum. Rather, we hold that a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation. We need not address Appellant's second argument that OSHA does not prohibit a common law claim for wrongful discharge because of our disposition that no such common law action was stated here. Accordingly, we affirm the decision of the Superior Court, which upheld the dismissal of Appellant's claim for wrongful discharge.

Justice SAYLOR concurs in the result.

Justice NIGRO files a dissenting opinion in which Justice ZAPPALA joins.

NIGRO, Justice, dissenting.

I respectfully dissent, as I believe that there is sufficient basis for Appellant's wrongful discharge claim to proceed.

I disagree with the majority position that no public policy of the Commonwealth is violated when an employee is discharged for lodging safety complaints to his or her employer. The majority states that this Court declares the public policy of the Commonwealth by looking to Pennsylvania precedent, constitution and statutes. Yet, the majority overlooks the existence of Pennsylvania law which precisely prohibits the conduct that Appellee engaged in. The Pennsylvania Health and Safety Act, 43 P.S. §§ 25-1 *et seq.*, specifically provides that: "All establishments shall be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate protection for the life, limb, health, safety, and morals of all persons employed therein." 43 P.S. § 25-2(a). Particularly relevant to the case *sub judice,* section 25-2(e) states:

All toxic and noxious dusts, fumes, vapors, gases, fibers, fogs mists or other atmospheric impurities, created in connection with any manufacturing process, emitted into or disseminated throughout areas where persons are employed in such quantities as, in the opinion of the [Department of Labor and Industry], would injure the health of employes or create other dangerous conditions, shall be removed at the point of origin, or where this is impractical, personal protective devices shall be provided and worn by persons subjected to such hazards.

43 P.S. § 25-2(e). The Commonwealth's public policy providing for safe work environments for its citizens could not be more clearly stated.

The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651, 660(c) ("OSHA"), states in its declaration of purpose and policy:

(b) The Congress declares it to be its purpose and policy ... to assure so far as possible every working man and

woman in the Nation safe and healthful working conditions and to preserve our human resources

(1) by encouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment, and to stimulate employers and employees to institute new and to perfect existing programs for providing safe and healthful working conditions.

29 U.S.C. § 651(b)(1). Moreover, the regulations supplementing OSHA specifically provide that "discharge of, or discrimination against, an employee because the employee has filed any complaint * * * under or related to this Act * * * is prohibited by section 11(c)." 29 C.F.R. § 1977.9(a). Plainly, the underlying policies of both the Pennsylvania Health and Safety Act and OSHA are to promote safe working environments for employees.

The Commonwealth's public policy dictating safe work environments for employees as provided for in the Pennsylvania Health and Safety Act, together with the stated purposes of OSHA and the policy stated in the regulations supplementing OSHA, provide a sufficient basis for Appellant's allegation of a public policy violation.[1] For these reasons, I respectfully dissent.

Justice ZAPPALA joins in this dissenting opinion.

---

**1.** Though Appellant broadly phrased her claim of a public policy violation, I find that it was sufficient to survive the preliminary objection stage of the litigation.