Janet CARLSON, Appellant,

v.

COMMUNITY AMBULANCE SERVICES, INC., Appellee.

Superior Court of Pennsylvania.

Submitted March 24, 2003.
Filed May 19, 2003.

---

D. Shawn White, Franklin, for appellant.

Keith M. Pemrick, Franklin, for appellee.

Before: BENDER, OLSZEWSKI, and CAVANAUGH, JJ.

OLSZEWSKI, J.

¶ 1 This is an appeal from the lower court's order granting appellee's motion for summary judgment. For the following reasons, we affirm.

¶ 2 Appellant Janet Carlson began employment with appellee Community Ambulance Services ("CAS") in 1995, remaining an at-will employee throughout. In December of 1998, she began a period of maternity leave and returned to work in early March of 1999. In the court below, she complained that she was soon demoted from "supervisor of dispatch" to "chief communications officer" and given a new supervisor. In its Answer, CAS contends that, although her title and supervisor were changed, this was not a demotion. Appellant claimed that she suffered severe headaches as a result of this change, as well as the stressful and hostile work environment in which she found herself. She claimed that, at the end of March, she was again demoted, this time to a dispatcher role. Appellee denied that this was involuntary, stating that appellant initiated the change. Soon thereafter, appellant terminated her employment.

¶ 3 The heart of appellant's complaint:

The actions of [appellee] in demoting [appellant], changing her status and job duties and otherwise demoting her from her previous position held and otherwise threatening that her wage would be reduced also, violates and [sic] significant

and recognized public policy and/or policies as outlined below:

(A) Violation of Pennsylvania Human Relations Act, 43 P.S. 951 et seq.

(B) The Pregnancy Discrimination Act, 29 U.S.C.S. Section 2000, (e)(k);

(C) The Family and Medical Leave Act, 29 U.S.C.S. Section 2601 et seq.

Complaint, 5/5/1999, at ¶ 15. Appellant sought damages to compensate her for her lost income and benefits, damage to her reputation, emotional pain and suffering, interest, and attorney's fees. She also alleged that appellee's actions were willful and malicious, and sought punitive damages.

¶ 4 In its Answer, appellee denied any illegal discriminatory treatment and included new matter averring that appellant had failed to state a cause of action and exhaust her administrative remedies. On a motion from appellee, the lower court granted summary judgment. This timely appeal followed. In it, appellant assigns error to the lower court for granting summary judgment "due to the appellant [sic] inability to bring causes of action under statutes only used as examples of public policy consideration." Appellant's brief at xvi.

¶ 5 Our standard of review of a grant of summary judgment is an abuse of discretion. *Albright v. Abington Mem. Hosp.,* 548 Pa. 268, 696 A.2d 1159, 1165 (1997). Summary judgment as a matter of law may be had where there are no genuine issues of material fact as to a cause of action. Pa.R.Civ.P. 1035.2.[1] In order to decide:

---

1. After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
 (1) whenever there is no genuine issue of any material fact as to a necessary element

of the cause of action or defense which could be established by additional discovery or expert report, or
(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who

[T]he lower court must examine the whole record, including the pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties. From this thorough examination the lower court will determine the question of whether there is a genuine issue as to any material fact. On this critical question, the party who brought the motion has the burden of proving that no genuine issue of fact exists. All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of summary judgment.

*Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900, 903 (1989).

■ ¶ 6 The lower court interpreted appellant's complaint as a request for relief under the three statutes. From this perspective, the grant of summary judgment to appellee was entirely appropriate. The Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.,* (PHRA) prohibits gender discrimination.[2] But, it required appellant to first file a complaint with the Pennsylvania Human Relations Commission (PHRC) and exhaust all administrative remedies before seeking redress in the courts. *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917, 919 (1989); *Bailey v. Storlazzi,* 729 A.2d 1206, 1214 (Pa.Super.1999). Appellant's counsel conceded in a deposition that appellant never filed a complaint with the PHRC, making her ineligible for relief in the lower court under the PHRA.

■ ¶ 7 Counsel also conceded that appellant did not file a complaint with the Equal Employment Opportunity Commission (EEOC). On a federal level, gender discrimination such as that alleged here is prohibited by the Pregnancy Discrimination Act (PDA), which is found in Title VII of the Civil Rights Act of 1964 (Title VII). 42 U.S.C.S. § 2000e–2(a)(1). The EEOC bears the responsibility of Title VII enforcement. 42 U.S.C.S. § 2000e–4(g). Appellant would not have been entitled to sue CAS under this statute in a federal court unless she had filed a complaint with the EEOC and she obtained permission from it to sue appellee in court. 42 U.S.C.S. § 2000e–5(f)(1).

¶ 8 Title VII also constrained appellant to pursue redress through the PHRC first. 42 U.S.C.S. § 2000e–5(c). In fact, had she first filed a complaint with the EEOC, it would have referred her claim to the PHRC for an initial evaluation. 42 U.S.C.S. § 2000e–5(d). Therefore, appellant was not entitled to bring a suit under the PHRA or Title VII because she did not first pursue administrative remedies.

■ ¶ 9 Finally, the Family Medical Leave Act (FMLA) was inapplicable. That act makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." 26 U.S.C.S. § 2615(a)(2). An "employer" under the FMLA "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C.S.

---

will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.
Pa.R.Civ.P. 1035.2.

2. It shall be an unlawful discriminatory practice [f]or any employer because of the

... sex ... of any individual ... to ... discriminate against such individual ... with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract ....
43 P.S. § 955(a).

§ 2611(4)(A)(1). In its motion for summary judgment, appellee claimed that it did not have that many employees for the required period, and filed an affidavit in support. Appellant has never contested this point. Weighing the grant of summary judgment, appellant was ineligible for relief under the FMLA.

■ ¶ 10 On appeal, appellant acknowledges that none of these statutes would have provided her with relief. Instead, she contends that, as an at-will employee, she was entitled to relief under public policy considerations embodied within those acts. Although she does not state what public policy considerations these are, we assume that she is referring to those associated with illegal pregnancy-based gender discrimination.[3]

■ ¶ 11 The at-will employment doctrine can be the basis of relief only where an employer expressly or constructively discharges an employee. Here, appellant admitted that she terminated her employment, so she must have pled and proved that she was constructively discharged in order to recover. "Constructive discharge of an at-will employee may serve as a basis for tort recovery if the employer has made working conditions so intolerable that an employee has been forced to resign." *Highhouse v. Avery Transp.*, 443 Pa.Super. 120, 660 A.2d 1374, 1376 (1995).

■ ¶ 12 Appellant, however, did not plead constructive discharge. "The purpose of the pleadings is to place the defendants on notice of the claims upon which they will have to defend. A complaint must give the defendants fair notice of the plaintiff's claims and a summary of the material facts that support those claims."

*Yacoub v. Lehigh Valley Medical*, 805 A.2d 579, 588 (Pa.Super.2002); *see* Pa.R.Civ.P. 1019. Since appellant never pled that she was constructively discharged, CAS would not have had adequate notice of the claim to prepare a defense against it. Her complaint, therefore, fails, making summary judgment appropriate.

■ ¶ 13 Assuming for the sake of argument that she had properly pled constructive discharge, we see no reason to grant her the requested public policy exception to the at-will employment doctrine. That doctrine holds that an employer may terminate an employee for any reason at all, unless restrained by contract. *McLaughlin v. Gastro. Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 286 (2000). The presumption that a non-contractual employment relationship is at-will is "an extremely strong one." *Id.* at 287. However, "[a]n employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *Id.*

■ ¶ 14 Whether or not a "public policy" should give an at-will employee a cause of action against their employer requires case-by-case analysis. *Field v. Philadelphia Elec. Co.*, 388 Pa.Super. 400, 565 A.2d 1170, 1179 (1989). Our Supreme Court provided some direction in *McLaughlin:*

> [W]e have stated in cases outside of the wrongful termination context that "public policy is to be ascertained by reference to the laws and legal precedents and not from supposed public interest." Implicit in the previous determinations of this Court is that we declare the

**3.** This failure, of itself, warrants dismissal of appellant's assignment. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 290 (2000) (A "bald reference to a violation of a federal regulation, without any

more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation.").

public policy of this Commonwealth by examining the precedent within Pennsylvania, looking to our own Constitution, court decisions and statutes promulgated by our legislature.

*Id.* at 288 (quoting *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231, 1237 (1998)).

¶ 15 In *Shick,* appellant was discharged for filing a Workers' Compensation claim. He, too, asked the courts to find a public policy exception to the at-will employment doctrine. Our Supreme Court held that, although the Workers' Compensation Act did not expressly discuss retaliatory discharge, a public policy exception did exist because:

> The Workers' Compensation Act is the exclusive means for obtaining compensation for injuries which has been substituted for common law tort actions between employees and employers. The Act restricts the remedies available to an employee for injuries sustained in the course of employment and closes to the employee any recourse against the employer at common law for negligence.

*Id.* at 1237 (citation omitted).

¶ 16 There is no similar need for a public policy exception here. The appellant in *Shick* was faced with a Hobson's choice of filing a claim and being terminated, or filing no claim and not being compensated. Under the Workers' Compensation Act, he would never have been able to seek redress in the courts. 77 P.S. § 481(a). Here, however, appellant was not terminated, let alone terminated for filing a claim with the PHRC or EEOC. Further, neither the PHRA nor Title VII permanently foreclosed litigation. We see no need to permit appellant to bypass the administrative structure and proceed directly to litigation.

¶ 17 The order of the court below is AFFIRMED.