Christine E. MOYER

v.

KAPLAN HIGHER EDUCATION COR-
PORATION, Individually and/or trad-
ing as Chi Institute, Quest Education
Corp., Individually and/or trading as
Kaplan Higher Education Corpora-
tion and/or Chi Institute

No. C.A. 03–6940.

United States District Court,
E.D. Pennsylvania.

Jan. 20, 2006.

Edward S. Mazurek, Jamie Kohen, Morgan Lewis & Bockius LLP, Philadelphia, PA, for Defendants.

Bruce Preissman, Southampton, PA, for Plaintiff.

### MEMORANDUM OPINION AND ORDER

PADOVA, District Judge.

The plaintiff brought this action under Title VII of the Civil Rights Act of 1964 (and the Pennsylvania Human Relations Act, 43 Pa.Stat. Section 951 et seq.), claiming the defendants subjected her to a sexually hostile work environment and then

retaliated against her by terminating her after she complained about the alleged hostile work environment and wrote two anonymous letters to management in which she criticized her boss and claimed morale at her place of employment was at an all-time low. Plaintiff has also added state claims for wrongful discharge and intentional infliction of emotional distress. Presently before the court is the motion of the defendants for summary judgment on all claims. For the reasons which follow, the motion is granted.

In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)). "Summary judgment will not lie if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On a motion for summary judgment, the facts should be reviewed in the light most favorable to the non-moving party. *See Matsushita Elec.Indus.Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact and avoid summary judgment. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1373 (3d Cir.1992).

As the court finds there are no genuine issues as to any fact material to the resolution of the summary judgment motion, we find this case is suitable for summary disposition.

Defendant CHI Institute ("CHI") is a private post-secondary school in Southampton, Pennsylvania. CHI is owned by Kaplan Higher Education Corporation. Plaintiff was employed at CHI from October 1998 until October 2002 as the Administrative Assistant to the Director of Education. In July 2002, Dale Anspach ("Anspach") was promoted from Director of Education to Executive Director. At the same time, Joan Rothberg ("Rothberg") was promoted to the position of Director of Education with plaintiff becoming her Administrative Assistant. Plaintiff's employment was terminated in October 2002 after defendants found that plaintiff had engaged in a persistent campaign to undermine Rothberg's authority which included submitting two anonymous letters to Kaplan's Human Resources Department in which plaintiff complained of low morale and poor management. In response to the two letters, Dianne McRae, Kaplan's District Manager for the Mid–Atlantic District, conducted an investigation at CHI. Her interviews with staff revealed that no instructors or employees other than plaintiff had any problem with morale or with Rothberg.

The sole basis for plaintiff's claim that defendants subjected her to a sexually hostile work environment is that Rothberg used profane language approximately three times a week and made a sexual comment in her presence on two separate occasions as described below:

Shortly after Rothberg became the Assistant Director of Education in July 2001, she used the Director of Edu-

cation's office to meet with a male student. When the student left, plaintiff claims Rothberg said to her, "I hope you don't mind that I had the door closed while I was meeting with that gentleman . . . .well, I just didn't want you to think I was in there giving him a blow-job." Plaintiff's Deposition at 28.

When Rothberg was still the Assistant Director of Education (sometime prior to July 2002), plaintiff was returning from lunch with Rothberg and Anspach, and as they were having a personal discussion. Rothberg allegedly stated, "if I knew then what I know now and had the body that I had then, I would be a slut." Plaintiff's Deposition at 31.

Defendants claim they are entitled to summary judgment on plaintiff's sexually hostile environment claim because plaintiff cannot show any hostile environment was the result of plaintiff's sex and that Rothberg's comments did not create a hostile work environment as a matter of law.

In her opposition to defendants' motion for summary judgment, plaintiff does not make any argument to counter defendant's claim that her hostile environment claim fails as a matter of law. Accordingly, we have no choice to but to conclude that plaintiff has abandoned her hostile environment claim and we will enter judgment in favor of the defendants and against the plaintiff on that claim.

Plaintiff next claims the defendants terminated her in retaliation for complaining about Rothberg's comments. Defendant argues that they are entitled to summary judgment on plaintiff's retaliation claim because plaintiff has failed to establish a *prima facie* case of retaliation as a matter of law. We agree.

■ In order to prove a *prima facie* case of retaliation under Title VII or the PHRA, a plaintiff first must prove: (1) she engaged in protected activity; (2) she suffered an adverse employment action either after or contemporaneous with her protected activity; and (3) a causal connection exists between her protected activity and the employer's adverse action. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997), *cert. denied* 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230. If the plaintiff establishes a *prima facie* case, the employer must produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at n. 2. If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. *Id.*

As our review of the record reveals that plaintiff cannot demonstrate that she engaged in a protected activity as far as her complaints about sexual harassment, defendant is entitled to summary judgment on the retaliation claim concerning complaints about sexual harassment.

■ In order to demonstrate that she engaged in a protected activity, plaintiff must show that she 1) opposed a practice made unlawful by Title VII or the PHRA, 2) filed a charge of discrimination, or 3)participated in a charge brought by another. 42 U.S.C. section 200oe-3a; 43 P.S. section 955(d). The Supreme Court has held that simply opposing an employment practice does not rise to the level of a protected activity if no reasonable person could believe that the actions complained of were unlawful. *Clark County School District v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (holding no *prima facie* case under Title VII established where no reasonable person could have believed she was complaining of protected activity).

Sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of employment and create an abusive working environment.'" *Faragher v. Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work and performance.'" *Faragher, supra* at 787–88, 118 S.Ct. 2275 (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

In the case *sub judice,* it should be noted that both Rothberg and plaintiff are women. Plaintiff testified at her deposition that Rothberg did not direct any of her cursing at plaintiff because she was a woman and that in fact Rothberg cursed in front of both male and female employees. Plaintiff's Deposition at 43–46, 131–132, 140. While Rothberg's cursing may have been crude and unprofessional, we find as a matter of law that such cursing, especially when not directed specifically at plaintiff, does not violate Title VII and that no reasonable person in plaintiff's position would have believed that it did. As noted by the Supreme Court, Title VII is not a "civility code" and is not meant to "purge the workplace of vulgarity." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

We also find as a matter of law that the "blow job" and "slut" comments were two isolated incidents over a 15–month period that simply do not constitute the type of pervasive and regular harassment forbidden by Title VII and that no reasonable person in plaintiff's position would have believed these isolated remarks constituted a hostile work environment. *See, Breeden, supra,* at 271, 121 S.Ct. 1508. (Male supervisor's reading from application out loud to plaintiff that "I hear making love to you is like making love to the Grand Canyon" held not actionable because "[n]o reasonable person could have believed that the single incident recounted" amounted to a Title VII hostile work environment claim.)

Plaintiff also claims that her termination was in retaliation for sending two anonymous letters to CHI's Human Resources Department in which she complained about Rothberg and the morale at CHI. We will generously assume that such activity constitutes protected activity under Title VII. Plaintiff suffered an adverse employment decision when she was terminated by defendants. Since the termination came the same month as the date plaintiff sent the second anonymous letter, we will also find a causal relationship exists between the time she wrote the letters and the time she was terminated. Therefore, we find that plaintiff has established a *prima facie* case of retaliation as to the anonymous letters.

Defendants have offered a legitimate non-discriminatory reason for terminating plaintiff in that she was terminated for insubordination for trying to undermine Rothberg's authority.

The burden is then on plaintiff to show both that the reason for plaintiff's termination was false and that the real reason plaintiff was terminated was for retaliation. Plaintiff has failed to point to any evidence in the record which could con-

vince a factfinder that the defendants' reason for terminating plaintiff was false. On the contrary, the record reveals that McRae conducted a thorough investigation into the claims in plaintiff's two letters. McRae interviewed 16 employees at CHI, including the Registrar, the Business Manager, the Assistant Director of Education, the Director of Admissions, the Financial Aid Director and numerous instructors. None of the employees who McRae interviewed voiced any concerns about CHI in general and Rothberg in particular. McRae's Interview Notes, Exhibit G in Defendants' Appendix to Motion for Summary Judgment. In fact, many of the employees interviewed stated that it was plaintiff who was the sole source of criticism against Rothberg. *Id.* When McRae confronted plaintiff with the results of the interviews, plaintiff claimed that everyone was lying. *Id.* Under these circumstances, no factfinder could find that defendants reason for terminating plaintiff-insubordination-was false and that the real reason was retaliation.

Plaintiff next alleges that the defendant wrongfully discharged her for refusing to falsify a faculty member's credentials. Specifically, plaintiff contends that in September 2002, when CHI was applying to upgrade its criminal justice program to an associate's degree program, Anspach asked plaintiff to list faculty member Rita Moskoff as an instructor who could teach desktop applications. Plaintiff's Deposition at 11, 60–62. Plaintiff believed that listing Moskoff for the desktop applications course would have been a falsification because plaintiff did not believe that Moskoff was qualified to teach that class. *Id.* at 63–65. Plaintiff testified that she was instructed by Anspach to substitute the signature page from a previous report of Moskoff who would never know what had been submitted in her name. *Id.* at 70.

In its motion for summary judgment, defendant contends that is entitled to summary judgment on the wrongful discharge claim because plaintiff was an at-will employee who has failed to show that her termination violated any public policy of Pennsylvania.

"Under Pennsylvania law, an at-will employee of a private sector employer can be terminated for good reason, bad reason, or no reason at all." *Clark v. Modern Group Ltd.,* 9 F.3d 321, 327 (3d Cir.1993)(citing *Nix v. Temple Univ.,* 408 Pa.Super. 369, 596 A.2d 1132, 1135 (1991))(internal quotations omitted). However, exceptions "have been recognized only in the most limited circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *McLaughlin v. Gastrointestinal Specialists, Inc.,* 561 Pa. 307, 750 A.2d 283, 287 (2000). The public policy of the Commonwealth is found by examining the precedent within Pennsylvania, the Pennsylvania Constitution, court decisions and statutes promulgated by the Pennsylvania legislature.

Pennsylvania courts have generally limited the public policy exceptions to the employment at-will doctrine to actions of the employer which (1) require an employee to commit a crime, (2) prevent the employee from complying with a statutorily imposed duty such as jury duty, and (3) the employer is prohibited by statute from terminating the employee. *Donahue v. Federal Express Corp.,* 753 A.2d 238, 244 (Pa.Super.2000).

The Commonwealth has further limited public policy exceptions to the at-will doctrine by recognizing that mere allegations of possible violations of federal law are insufficient to base a claim on a violation of state public policy. *McLaughlin, supra.,* recognized that "in order to set

forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest. The Plaintiff in some way must allege that some public policy of this Commonwealth is implicated, undermined or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth." 750 A.2d at 289 (emphasis added).

■ Plaintiff contends that by directing her to remove the signature page from a form Moskoff had previously signed and attach it to the new form plaintiff believed contained false credentials for Moskoff, Anspach was in effect asking her to break the law by committing forgery and that by directing her to falsify Moskoff's credentials, Anspach was in effect asking her to tamper with public records.

We need not decide whether plaintiff was ever asked to commit a crime because assuming, *arguendo*, that she was, the record reveals absolutely no causal relationship between that request and plaintiff's refusal to do so. There is no evidence in the record that Anspach (who allegedly asked plaintiff to falsify the credentials) played any role in the decision to terminate plaintiff. Rather, it was McRae who, after conducting numerous interviews with CHI employees into plaintiff's allegations in her anonymous letters, concluded that plaintiff should be terminated. Indeed, there is no evidence that McRae even knew about plaintiff's refusal to complete Moskoff's accreditation form.

For these reasons, plaintiff's wrongful discharge claim fails as a matter of law.

Plaintiff has also asserted a claim for intentional infliction of emotional distress. Defendants contend that they are entitled to summary judgment on this claim since a claim for intentional infliction of emotional distress falls under the exclusive purview of the Pennsylvania Worker's Compensation Act ("PWCA").

■ The PWCA provides the sole remedy for "injuries allegedly sustained during the course of employment." 77 Pa.Stat.Ann.section 481(a). It is well-established that claims for intentional infliction of emotional distress arising out of an employment relationship are generally barred under the PWCA. *See Matczak v. Frankford Candy and Chocolate Co.,* 136 F.3d 933, 940 (3d Cir.1997); *Ogden v. Keystone Residence,* 226 F.Supp.2d 588, 604 (M.D.Pa.2002); *Imboden v. Chowns Communications,* 182 F.Supp 2d 453, 456 (E.D.Pa.2002). The one exception is where the employee's injuries are caused by intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of her employment. *See id.* Section 411(1). Courts have applied this exception to claims for sexual harassment on the job where the harassment is personal in nature and not part of the employer-employee relationship. *See generally Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 160 (3d Cir.1999).

■ Here, there is absolutely no evidence in the record that the remarks directed to plaintiff by Rothberg were personal in nature and not part of the employer-employee relationship. All the remarks occurred at work and in the course of business. In addition, the remarks were made in front of other employees and were not directed at plaintiff. Therefore, plaintiff's claim for intentional infliction of emotional distress is barred by the PWCA.

Even if the defendants' conduct could somehow be construed as personal in nature to fall within the PWCA exception, we find as a matter of law that it was not

"atrocious" or "utterly intolerable in a civilized society" so as to present a claim for intentional infliction of emotional distress.

For the foregoing reasons, summary judgment is entered in favor of the defendants and against the plaintiff.

## ORDER

The motion of the defendants for summary judgment (Doc. # 14) is GRANTED.

Judgment is entered in favor of the defendants and against the plaintiff.

IT IS SO ORDERED.