J-A13036-25

2025 PA Super 269

| ERIC BRADER, M.D. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLEGHENY HEALTH NETWORK AND | : | |
| AHN MEDICAL GROUP | : | |
| | : | No. 1164 WDA 2024 |
| Appellants | : | |

Appeal from the Order Entered May 20, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-17-012756

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.: **FILED: December 2, 2025**

Appellants, Allegheny Health Network ("AHN") and AHN Medical Group

("Medical Group"), appeal from the trial court's May 20, 2024 order denying

their motion for summary judgment against Appellee, Eric Brader, M.D. Upon

review, we reverse.

## Background

In 2014, Dr. Brader — an emergency physician — became an employee

of Medical Group and worked in the emergency department of Allegheny

General Hospital. Amended Complaint, 2/6/18, at ¶ 5; Appellants' Brief at

11.[1] In addition, he also performed administrative services as EMS Medical

---

[1] Briefly, as it is not germane to the issues before us on appeal, the record
indicates that Medical Group employs physicians and other personnel who
ultimately provide services at hospitals. **See** Amended Complaint at ¶ 2
(stating that Medical Group "employs and provides hospitals with emergency
physicians"); Medical Group's Answer and New Matter, 5/18/18, at ¶ 2
*(Footnote Continued Next Page)*

Director, Director of Emergency Ultrasound, Associate Fellowship Director, and Core Faculty for Allegheny General Hospital. Amended Complaint at ¶ 6; *see also id.* at Exhibit 1; Appellants' Appendix, 2/21/24, at Exhibit I ("MacLeod Declaration") at Exhibit B at 21. Dr. Brader alleged that, while employed in this capacity, emergency physicians were not permitted to speak directly with attending specialists and were instead required to communicate with them through residents. Amended Complaint at ¶ 7.

On the evening of June 6, 2014, into the early hours of June 7, 2014, Dr. Brader treated a patient in the emergency department, and said that he advised orthopedic surgical residents before the end of his shift that the patient needed to be admitted to the hospital and required surgical intervention. *Id.* at ¶¶ 8-9; Appellants' Appendix at Exhibit B ("Brader Dep. 1") at 78-80; Dr. Brader's Brief in Opposition, 3/25/24, at Exhibit 1 ("Brader

---

(conveying that Medical Group "employs physicians, physician assistants, nurse practitioners, and other personnel and employees, whom it leases to various companies that have contracted … with [Medical Group] to provide emergency medicine services at hospitals"); AHN's Answer and New Matter, 5/22/18, at ¶ 2 (same). AHN is a health network with seven hospitals, including Allegheny General Hospital. Amended Complaint at ¶ 3; Medical Group's Answer and New Matter at ¶ 3; AHN's Answer and New Matter at ¶ 3. The record indicates that the parties agreed below that Medical Group employed Dr. Brader, but disputed whether AHN also employed him; however, that issue is not raised before us in this appeal, and we need not resolve whether AHN also employed Dr. Brader to dispose of the issues raised herein. *See* Amended Complaint at ¶¶ 2-3; Medical Group's Answer and New Matter at ¶¶ 2-3; AHN's Answer and New Matter at ¶¶ 2-3.

Dep. 2") at 75-77.[2]  On June 9, 2014, Dr. Brader said he dictated his note about having seen the patient, remarking that the case was discussed with orthopedic service and that they would admit the patient and determine the need for operative therapy.  Brader Dep. 2 at 77-78.

After finishing his dictation on June 9, 2014, Dr. Brader stated that he did not think about the patient again, as he assumed the patient was admitted and treated.  Brader Dep. 2 at 80-81.  However, after Dr. Brader's shift had ended and unbeknownst to him, the patient was not admitted and instead sent home.  Brader Dep. 2 at 85.  As a result, Dr. Brader relayed that the patient did not receive surgery for several days and ultimately suffered permanent disability.  *Id.*; Amended Complaint at ¶ 15.

Dr. Brader said he first learned about what had happened to the patient on November 14, 2014, after the patient filed a lawsuit against him.  Brader Dep. 2 at 87-88.  That same day, he said he spoke with Kathy Sikora, a nurse manager of the emergency department and member of the patient safety committee at Allegheny General Hospital, about sending an email to hospital administration about the dangerous situation created for patients through policies where emergency physicians cannot talk to attending physicians directly, but have to "go through" their residents, who are intimidated from

_____

[2] The parties each cited to portions of Dr. Brader's June 27, 2019 deposition in their summary judgment filings below.  To indicate where the deposition can be found in the record, we refer to the portions of the deposition included in Appellants' appendix in support of their motion for summary judgment as "Brader Dep. 1," and to the portions attached to Dr. Brader's brief in opposition as "Brader Dep. 2."

calling attending physicians at night. Brader Dep. 2 at 90-93. Dr. Brader described this practice as "resident shielding" whereby "residents are permitted to avoid calling attending physicians to admit patients on the orders of emergency room physicians because[,] *inter alia*, the residents at night do not want to awaken the attending admitting physicians." Dr. Brader's Brief at 2 (citations omitted). He claimed it was an ongoing and rampant problem. Brader Dep. 2 at 83-84, 93.

According to Dr. Brader, Ms. Sikora agreed he should send an email to report the issue. Brader Dep. 2 at 91-92. A few days later, on November 18, 2014, Dr. Brader sent an email about the issue to the medical director of the emergency department and others. **See** Appellants' Appendix at Exhibit E. Therein, among other things, he complained that the patient's situation "is a classic case of consulting subspeciality residents run amok, enabled by consulting specialty program attendings who wish them to be able to override the emergency department attending, so that inconvenient cases can be avoided and the liability thrown back on the emergency department attending[.]" **Id.** at 1 (unnumbered).

Dr. Bruce MacLeod — Medical Group's director and AHN's president of emergency medicine management at the time — said that Dr. Brader's email damaged Dr. Brader's working relationship with hospital administration and impacted the emergency department's morale. MacLeod Declaration at ¶¶ 3, 5. Consequently, on November 23, 2014, Dr. MacLeod stated that he initiated the process for Dr. Brader to obtain credentials at AHN's Canonsburg Hospital

for a temporary assignment at that facility. *Id.* at ¶ 6. Dr. MacLeod said that Dr. Brader began working shifts at Canonsburg Hospital in January 2015, while maintaining his clinical status at Allegheny General Hospital. *Id.* at ¶ 8. Dr. Brader, however, did not wish to work at Canonsburg Hospital, which Dr. Brader alleged was a less desirable practice compared to Allegheny General Hospital. *See* Dr. Brader's Reply to New Matter, 6/7/18, at ¶ 55.

Later, in September 2015, Appellants decided to eliminate Dr. Brader's stipend he previously was receiving for his role as EMS Medical Director, Director of Emergency Ultrasound, Associate Fellowship Director, and Core Faculty, and remove him from that role, effective at the end of December 2015. *See* MacLeod Declaration at ¶¶ 9, 12; Dr. Brader's Brief at 6-7. Dr. MacLeod said this decision was made because another individual was also performing this role at Allegheny General Hospital, and it was redundant for both Dr. Brader and the other doctor to perform this role. MacLeod Declaration at ¶ 11; Dr. Brader's Brief at 6-7. The stipend, according to Dr. Brader, amounted to $136,393 a year. Amended Complaint at ¶ 25. Dr. Brader said that he learned of the decision on September 19, 2015. *Id.* at ¶ 27; *see also* MacLeod Declaration at ¶ 12 (Dr. MacLeod's stating that Dr. Brader was informed of the elimination of his stipend on or around September 23, 2015).

On December 6, 2015, Dr. Brader submitted notice of his resignation from Medical Group. *See* Appellants' Appendix at Exhibit F ("Answers to Appellants' First Requests for Admissions") at ¶ 17. Before he resigned his

employment with Medical Group, Dr. Brader had already accepted an offer of employment from the Cleveland Clinic. *Id.* at ¶ 18.

Dr. Brader filed a praecipe for writ of summons against Appellants on September 15, 2017, followed by a complaint on December 19, 2017. After Appellants filed preliminary objections, Dr. Brader filed an amended complaint on February 6, 2018, which contained two counts. Count I claimed that Appellants violated the Medical Care Availability and Reduction of Error Act ("MCARE Act"), 40 P.S. § 1303.101 *et seq.*, by discharging him from his role as EMS Medical Director, Director of Emergency Ultrasound, Associate Fellowship Director, and Core Faculty in retaliation for the report he made. Count II included a claim for common law wrongful discharge, asserting that his discharge contravenes the public policy of Pennsylvania as set forth in the MCARE Act.

Appellants, again, filed preliminary objections. Therein, among other things, they argued that Count I is time-barred because it was not filed within 180 days of the alleged retaliatory action as required by the MCARE Act, and that Count II fails because the MCARE Act provides Dr. Brader with a statutory remedy to recover for alleged retaliatory conduct, thereby preempting his common law wrongful discharge claim.

On March 23, 2018, the Honorable John T. McVay, Jr., entered an order overruling Appellants' preliminary objections. In his partly handwritten order, he said that "MCARE § [1303.]308 does not specify any statute of limitations and **Denton**[ **v. Silver Stream Nursing and Rehab. Ctr.**], 7[39] A.2d [57]1

- 6 -

[(Pa. Super. 1999),] allows [illegible] actions to proceed." Order, 3/23/18.[3]

Appellants moved for Judge McVay to amend and certify his order for interlocutory appeal pursuant to 42 Pa.C.S. § 702(b), but he denied their motion.[4] Appellants thereafter filed answers and new matters to Dr. Brader's amended complaint, to which Dr. Brader replied.

On February 21, 2024, Appellants filed a motion for summary judgment and brief in support. Among other issues, with respect to Count I, Appellants once again raised that Dr. Brader's claim under the MCARE Act is time-barred. Regarding Count II, they argued, *inter alia*, that Dr. Brader's common law wrongful discharge claim fails because the MCARE Act preempts it.

Dr. Brader thereafter filed a brief in opposition. Following oral argument, the Honorable Chelsa Wagner issued an order denying Appellants' motion for summary judgment on May 20, 2024.[5] On May 20, 2024,

_____

[3] As discussed *infra*, **Denton** relates to the preemption issue raised with respect to the common law wrongful discharge claim.

[4] **See** 42 Pa.C.S. § 702(b) ("When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.").

[5] Although this order was dated April 18, 2024, notice of this order pursuant to Pa.R.Civ.P. 236 was not given until May 20, 2024. **See** Pa.R.Civ.P. 236(b) (requiring that the prothonotary note in the docket the giving of written notice of the entry of an order); Pa.R.A.P. 108(b) (stating that the date of entry of a

*(Footnote Continued Next Page)*

- 7 -

Appellants filed a motion to amend and certify the order for interlocutory appeal under Section 702(b) with the trial court, which Dr. Brader opposed. On June 18, 2024, Judge Wagner denied the motion.[6]

Appellants filed a petition for permission to appeal pursuant to Section 702(b) with this Court on July 16, 2024.[7] Therein, Appellants asked this Court to consider the questions of whether a 180-day statute of limitations applies to claims for retaliation brought under the MCARE Act, and if the MCARE Act preempts common law wrongful discharge claims that are based solely on the MCARE Act. This Court subsequently granted the petition for permission to appeal. Judge Wagner then issued an opinion to support the summary judgment order. **See** Trial Court Opinion ("TCO"), 1/14/25.

## Issues

In accordance with their petition for permission to appeal, Appellants raise the following issues of our review:

---

civil order "shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by [Rule] 236(b)").

[6] This order was dated June 17, 2024, but Rule 236 notice was not given until June 18, 2024.

[7] **See** Pa.R.A.P. 1311(a) (stating that an appeal may be taken by permission from an interlocutory order for which certification pursuant to Section 702(b) was denied); **see also** Pa.R.A.P. 1311(b) ("Permission to appeal from an interlocutory order listed in subdivision (a) may be sought by filing a petition for permission to appeal with the prothonotary of the appellate court within 30 days after entry of such order or the date of deemed denial in the trial court….").

1. Does the 180-day statute of limitations in the Whistleblower Law, 43 P.S. § 1424(a), apply to claims for retaliation brought under the MCARE Act, 40 P.S. § 1303.308(c) — which incorporates the "protections" and "remedies" of the Whistleblower Law — thereby rendering [Dr. Brader's] MCARE Act claim untimely because it was filed two years after the alleged adverse action?

2. Does the MCARE Act preempt common law wrongful discharge claims that are based solely on the MCARE Act, 40 P.S. § 1303.308(c)?

Appellants' Brief at 6.[8]

## Analysis

*Coordinate Jurisdiction Rule*

Before delving into Appellants' two issues, we preliminarily consider the coordinate jurisdiction rule and the circumstances of this case. "Generally, the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." *Zane v. Friends Hosp.*, 836 A.2d 25, 29 (Pa. 2003) (citations omitted). In other words, "judges of coordinate jurisdiction should not overrule each other's decisions." *Id.* (citations omitted). In addition to promoting the goal of judicial economy, the coordinate jurisdiction rule "serves (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case;

---

[8] Appellants raised various other arguments below as to why Dr. Brader's MCARE Act and common law wrongful discharge claims fail. We do not address these arguments, as they are not before us in this appeal. *See* Pa.R.A.P. 1312(a)(4) ("Only the questions set forth in the petition[ for permission to appeal], or fairly comprised therein, will ordinarily be considered by the court in the event permission to appeal is granted.").

(4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." ***Ivy Hill Congregation of Jehovah's Witnesses v. Dept. of Human Servs.***, 310 A.3d 742, 754 (Pa. 2024) (citation omitted). "[T]he coordinate jurisdiction rule applies unless there has been a change in the law; a change in the facts; or a conclusion that the initial ruling was clearly erroneous, and that following it would create a manifest injustice." ***Id.*** at 758. "While a ruling issued at a different stage of the proceedings may give rise to one of the limited exceptions to the coordinate jurisdiction rule — for example, a change in the facts — it is the demonstration of the exceptional circumstance, not the distinct procedural posture, which renders the coordinate jurisdiction rule inapplicable." ***Id.***

Here, as recounted above, Appellants first advanced the two issues on appeal in preliminary objections before Judge McVay. Judge McVay denied the preliminary objections. Subsequently, Appellants raised these same two issues before Judge Wagner on summary judgment. Judge Wagner seemed unsure as to whether she was bound by Judge McVay's decision but, in any event, agreed with his disposition.[9] Judge Wagner thereby denied Appellants' motion for summary judgment.

_____

[9] With respect to the MCARE Act claim in Count I, Judge Wagner stated in her order denying summary judgment that, "[t]hough this Court did conduct its own independent analysis on the statute of limitations issue[], it should be noted that Judge McVay reached a similar conclusion on the same issue at the preliminary objections stage of this litigation, and the [c]oordinate
*(Footnote Continued Next Page)*

The record shows that Appellants posed the exact same legal questions to Judge Wagner on summary judgment as they had posed to Judge McVay on preliminary objections. To us, this undoubtedly implicates the coordinate jurisdiction rule. *See Zane*, *supra*. Appellants argue that Judge Wagner was not bound by the coordinate jurisdiction rule to follow Judge McVay's decision because the difference in procedural posture between preliminary objections and summary judgment renders the coordinate jurisdiction rule inapplicable. Appellants' Brief at 25-27. Our Supreme Court, however, has squarely

_____

[j]urisdiction [r]ule would entitle Judge McVay's ruling to deference." Order, 5/20/24, at 1 (unnumbered). Later, though, Judge Wagner elaborated:

> Importantly, prior to coming before me, the question of the statute of limitations had been addressed by one of my colleagues, [Judge] McVay, who, in response to [p]reliminary [o]bjections filed by [Appellants], entered an [o]rder … concluding that "the MCARE Act does not specify any statute of limitations," thereby applying the two-year statute of limitations found in … 42 Pa.C.S. §[]5524. Judge McVay concluded that Dr. Brader had timely filed his lawsuit within the applicable statute of limitations. Judge McVay then declined a request from [Appellants] to certify that [o]rder for immediate appeal. During the intervening six years, I am aware of no additional facts relevant to the statute of limitations issue. Therefore, while I do not regard myself as being bound by Judge McVay's earlier decision, I did find the analysis of my learned colleague on an identical issue to be of significant persuasive value. Ultimately, I agree with it wholeheartedly based upon my independent review of the record presented to me.

TCO at 5. Further, although Judge Wagner recognized that Judge McVay had already addressed Appellants' statute of limitations argument with respect to the MCARE Act claim in Count I, Judge Wagner did not acknowledge or consider that Judge McVay had also already addressed Appellants' argument that Dr. Brader's common law wrongful discharge claim in Count II was preempted by the MCARE Act.

- 11 -

rejected this argument. ***See Ivy Hill***, ***supra***.[10] Thus, in order for the coordinate jurisdiction rule to not apply, Appellants must demonstrate an exceptional circumstance that would permit Judge Wagner to overrule legal questions already decided by Judge McVay.

Admittedly, Appellants do not discuss any of these exceptions outright in their brief. They also point to no change in the facts or the law during the time between the two rulings. Through their substantive arguments, though, Appellants indirectly argue that Judge McVay's rulings — with which Judge Wagner ultimately agreed — were clearly erroneous and would result in a manifest injustice if followed. As we review Appellants' issues, we will consider if this exception is met, such that Judge Wagner was not bound to follow Judge McVay's rulings and should have granted Appellants' summary judgment motion.[11]

_____

[10] We observe that the Supreme Court's decision in ***Ivy Hill***, which conveyed that procedural posture alone does not render the coordinate jurisdiction rule inapplicable and that one of the exceptions to the coordinate jurisdiction rule must be present, was issued on February 13, 2024. Notably, the Supreme Court's ***Ivy Hill*** decision was filed ***before*** Appellants submitted their February 21, 2024 motion for summary judgment.

[11] It is unclear to us why Appellants did not seek appellate review following Judge McVay's order denying certification. We recognize that a different version of Rule 1311 was in effect at the time of Judge McVay's decision. Nevertheless, there is no indication that Appellants sought review of Judge McVay's order with this Court by the other means available at that time. ***See*** Pa.R.A.P. 1311, *Note* ("[Previously, a]n order refusing to certify an order as meeting the requirements of 42 Pa.C.S. § 702(b) was reviewed by filing of a petition for review under Chapter 15. [Rule 1311] was amended in 2020 to expand the use of a petition for permission to appeal to requests for review of
*(Footnote Continued Next Page)*

*Standard and Scope of Review*

In reviewing an order granting or denying summary judgment,

> [w]e view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Siciliano v. Mueller***, 149 A.3d 863, 864 (Pa. Super. 2016) (citation omitted).

In addition, "[t]he issue of whether a court's order or decision violates the coordinate jurisdiction rule is a question of law. Thus, our standard is *de novo*." ***Ivy Hill***, 310 A.3d at 754 (citation omitted).

---

interlocutory orders that were not certified for immediate review pursuant to 42 Pa.C.S. § 702(b)…."); ***see also Commonwealth v. Brister***, 16 A.3d 530 (Pa. Super. 2011) (discussing prior procedure for seeking appellate review where trial court denied certification); ***Commonwealth v. McMurren***, 945 A.2d 194 (Pa. Super. 2008) (same).

We discourage parties from repeating this type of delay. Delaying seeking review causes judicial resources to be wasted and undermines the expectations of the other party. This Court may also be less likely to permit an interlocutory appeal if we surmise that the petitioner is manipulating the timeliness requirements for seeking such interlocutory review. ***See*** Pa.R.A.P. 1311(b), ***supra***. Here, even though Appellants failed to seek our interlocutory review of these controlling questions of law at the first opportunity to do so, a motions panel of this Court chose to accept Appellants' appeal. As we do not find this clearly erroneous, we abide by their decision to permit this appeal. ***See Ivy Hill***, ***supra***; ***Zane***, ***supra***; ***cf. Basile v. H&R Block, Inc.***, 973 A.2d 417, 422 n.6 (Pa. 2009) (recognizing that the failure to file an earlier interlocutory appeal by permission pursuant to Rule 1311 does not result in waiver "because to find waiver would create a 'self-contradictory *mandatory*, permissive interlocutory appeal'") (citation omitted; emphasis in original).

*First Issue*

In Appellants' first issue, they argue that Dr. Brader's MCARE Act claim is time-barred. By way of background, the General Assembly enacted the MCARE Act after finding, among other things, that "[e]very effort must be made to reduce and eliminate medical errors by identifying problems and implementing solutions that promote patient safety." 40 P.S. § 1303.102(5). To this end, the MCARE Act sets forth the following, in relevant part, regarding reporting:

**§ 1303.308. Reporting and notification**

**(a) Reporting.--**A health care worker who reasonably believes that a serious event or incident has occurred shall report the serious event or incident according to the patient safety plan of the medical facility unless the health care worker knows that a report has already been made. The report shall be made immediately or as soon thereafter as reasonably practicable, but in no event later than 24 hours after the occurrence or discovery of a serious event or incident.

\*\*\*

**(c) Liability.--**A health care worker who reports the occurrence of a serious event or incident in accordance with subsection (a) … shall not be subject to any retaliatory action for reporting the serious event or incident and shall have the protections and remedies set forth in the act of December 12, 1986 (P.L. 1559, No. 169),[2] known as the Whistleblower Law.[12]

   [2] 43 P.S. § 1421 *et seq*.

40 P.S. § 1303.308(a), (c).

---

[12] The Whistleblower Law provides protection for employees of a public employer who report a violation or suspected violation of state, local, or federal law. ***See Bailets v. Pa. Turnpike Com'n***, 123 A.3d 300, 307 (Pa. 2015).

The Whistleblower Law, referenced in Section 1303.308(c), provides the following, in relevant part:

### § 1423.  Protection of employees

**(a) Persons not to be discharged.--**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

**(b) Discrimination prohibited.--**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee is requested by an appropriate authority to participate in an investigation, hearing or inquiry held by an appropriate authority or in a court action.

**(c) Disclosure prohibition.--**An appropriate authority to which a violation of this act was reported may not disclose the identity of a whistleblower without the whistleblower's consent unless disclosure is unavoidable in the investigation of the alleged violation.

43 P.S. § 1423.

### § 1424.  Remedies

**(a) Civil action.--**A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation.

**(b) Necessary showing of evidence.--**An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority.

**(c) Defense.--**It shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual….

43 P.S. § 1424(a), (b), (c).

### § 1425.  Enforcement

A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies.  A court shall also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the complainant prevails in the civil action.

43 P.S. § 1425.

Here, Dr. Brader alleged that he made a good faith report to Appellants of a serious event at the hospital in November 2014, and Appellants discharged Dr. Brader from his position as the EMS Medical Director, Director of Emergency Ultrasound, Associate Fellowship Director, and Core Faculty in retaliation for the report in September 2015, in violation of the MCARE Act. Dr. Brader's Brief at 6-7; Amended Complaint at ¶¶ 24-27, 32-33.  Appellants, however, argue that this claim is time-barred under Section 1303.308(c), as Dr. Brader did not initiate this action until September 2017.  ***See*** Appellants' Brief at 16-17.

Specifically, Appellants assert that "the legislature made clear that retaliation claims under the MCARE Act are subject to the same statute of limitations as claims under Pennsylvania's Whistleblower Law: 180 days." ***Id.*** at 21.  Appellants point out that various courts have reached this conclusion.

*Id.* at 21-22 (citing *Kreiss v. Main Line Health, Inc.*, No. 1396 EDA 2018 (Pa. Super. filed May 29, 2019) (unpublished memorandum); *Gillispie v. RegionalCare Hosp. Partners, Inc.*, 2015 WL 1839149 (W.D. Pa. Apr. 21, 2015), *aff'd* 892 F.3d 585 (3d Cir. 2018); *Fisher v. Catholic Soc. Servs.*, 2019 WL 3731688 (E.D. Pa. Aug. 8, 2019)).[13]  Appellants claim that "[t]here is no support for the notion — either in the statute or common sense — that the MCARE Act's incorporation of the 'protections and remedies' of the Whistleblower Law somehow does not extend to the Whistleblower Law's limitations period." *Id.* at 23.  They observe that Section 1424(a) is expressly entitled 'Remedies,' *id.*, and say that not incorporating the 180-day limitation would mean that "the legislature intended to incorporate the part of the 'Remedies' provision that allows for a person to file a lawsuit, but not the part of that provision placing a 180-day limitation on doing so — essentially placing a period after the word 'both' and eliminating the rest of the sentence." *Id.* at 25.  They argue that this reading would "require rewriting the Whistleblower Law's provision creating a private cause of action." *Id.* at 24.

Dr. Brader, on the other hand, insists that the MCARE Act does not specify the statute of limitations for actions brought by health care workers

---

[13] We recognize that none of these decisions are binding on this Court.  *See* Pa.R.A.P. 126(b) (stating that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value); *Commonwealth v. Huggins*, 68 A.3d 962, 968 (Pa. Super. 2013) ("[T]his Court is not bound by decisions of federal courts inferior to the United States Supreme Court, even though we may look to them for guidance.") (citation and footnote omitted).

retaliated against for reporting events compromising patient safety, and discerns that there are no precedential opinions addressing this issue. Dr. Brader's Brief at 15. He suggests that, because actions brought by health care workers who were retaliated against are founded on negligent, intentional, or otherwise tortious conduct, such claims presumably have a two-year statute of limitations. *Id.* (citing, in part, 42 Pa.C.S. § 5524(7)).[14] He argues that he "brought his MCARE Act claim within two years of his notification that his $136,000 stipend was being eliminated and clearly within two years of his constructive discharge. Accordingly, the statute of limitations had not expired when he filed his claim." *Id.* at 15-16.

Dr. Brader also claims that "the reach of the Whistleblower Law is limited to employees of a 'publicly-funded employer,' not, as here, a private employer." *Id.* at 17 (citations omitted). In addition, he argues that "the [l]egislature did not incorporate the Whistleblower Law wholesale[,]" but instead, "it purposefully and expressly incorporated only the 'protections and remedies' of the Whistleblower Law." *Id.* Dr. Brader posits that "the statute of limitations applicable to Whistleblower Law claims is NOT among the 'protections' to which health care workers are entitled under the MCARE Act. Indeed, a statute of limitations is not a protection of health care workers at

---

[14] *See* 42 Pa.C.S. § 5524(7) ("The following actions and proceedings must be commenced within two years: … (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.").

all. If anything[,] it is a protection of employers." *Id.* at 18 (capitalization in original). He similarly claims a statute of limitations is not a 'remedy' because it "does not provide a means of reparation for employees and is not something that corrects or counteracts a violation of the MCARE Act or Whistleblower Law for employees." *Id.* at 22. He also submits that the remedies to which employees are entitled under the Whistleblower Law are stated in Section 1425, not Section 1424. *Id.* at 11 ("The statute of limitations in the Whistleblower Law is neither a protection afforded employees under the law (43 P.S. § 1423), nor one of the specified remedies for employees under the law (43 P.S. § 1425).").

In denying Appellants' summary judgment motion, Judge Wagner employed much of the same reasoning advanced by Dr. Brader. She stated that "the MCARE Act lacks a statute of limitations period by which aggrieved workers must file a lawsuit to obtain the remedies set forth in the anti-retaliation provisions of the Act. This omission by the [l]egislature results in the application of the two-year statute of limitations for tort claims as set forth in [Section] 5524…." TCO at 6. Further, she opined that "a statute of limitations is certainly not a 'protection' that would be given to a victim of improper retaliation. Nor — and even more clear — is a statute of limitations a 'remedy.'" *Id.* at 7. Judge Wagner conveyed that she did "not believe that the [l]egislature intended to … offer 'protections' to employers by limiting the statutory period in which to bring suit. This seems antithetical to the overriding purpose of the MCARE Act." *Id.* at 8. Finally, as mentioned *supra*,

she noted that Judge McVay also ascertained that the MCARE Act lacks a statute of limitations. *Id.* at 5.

Resolution of this issue requires us to interpret provisions of the MCARE Act and Whistleblower Law. In doing so, we remain mindful that:

> [T]he Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. §§ 1501-1991, … provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). Generally, the plain language of the statute provides the best indication of legislative intent. If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then we cannot disregard the letter of the statute under the pretext of pursuing its spirit. In this vein, we should not insert words into [a statute] that are plainly not there. When the statutory language is ambiguous, however, we may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c), and other rules of statutory construction. Additionally, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a). We also presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable, and that the General Assembly intends the entire statute to be effective and certain.

*Ursinus College v. Prevailing Wage Appeals Bd.*, 310 A.3d 154, 170-71 (Pa. 2024) (some citations and quotation marks omitted; some brackets added).

As set forth above, Section 1303.308(c) of the MCARE Act says that a health care worker who reports the occurrence of a serious event or incident in accordance with the statute "shall not be subject to any retaliatory action

for reporting the serious event or incident and shall have the protections and remedies set forth in … the Whistleblower Law." 40 P.S. § 1303.308(c). Thus, the plain language of Section 1303.308(c) incorporates the protections and remedies of the Whistleblower Law.[15] In turn, Section 1424 of the Whistleblower Law, which is entitled "Remedies[,]" provides in Subsection (a) that "[a] person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation." 43 P.S. § 1424(a). Thus, the plain language of Section 1424(a) affords a complainant the remedy of bringing a civil action within 180 days after the occurrence of the alleged violation.[16] Reading the plain language of these two statutes together, it is clear and unambiguous to us that the General Assembly intended for the 180-day limitation to apply to retaliation claims made pursuant to Section 1303.308.[17] A contrary reading would require us to avoid

---

[15] Because the MCARE Act specifically incorporates the remedies and protections of the Whistleblower Law, we deem Dr. Brader's argument that the reach of the Whistleblower Law is limited to employees of publicly-funded employers to be unpersuasive.

[16] We disagree with Dr. Brader's suggestion that Section 1425 exclusively governs the remedies available under the Whistleblower Law. Section 1425 does not provide a complainant with the right to bring a civil action, but only addresses the relief a trial court may grant in rendering a judgment in such an action.

[17] *Accord Kreiss*, *supra*, at *10-11 (agreeing with the trial court, in *dicta*, that, "[a]bsent the incorporation of [Section] 1424(a) of the Whistleblower Law, no right to a civil action would exist for a whistleblower under the MCARE
*(Footnote Continued Next Page)*

giving effect to all of the language in Section 1424(a). *See Ursinus College*, *supra*.[18] Accordingly, we conclude that retaliation claims under the MCARE Act have the same 180-day statute of limitations as claims under the Whistleblower Law.

Having determined that the 180-day limitation period applies to retaliation claims under the MCARE Act, we consider the timing of the filing of Dr. Brader's action. He submits that he was retaliated against in September 2015, when he was notified that he would no longer serve in certain administrative roles and that his stipend was being eliminated. Yet, Dr. Brader did not file a praecipe for writ of summons, commencing this action against Appellants, until September 15, 2017. Unquestionably, his retaliation claim under the MCARE Act is time-barred, as it was filed more than 180 days after the purported retaliatory action. Further, because Judge McVay's ruling to the contrary was clearly erroneous, and it would be manifestly unjust to let Dr. Brader's MCARE Act claim proceed where it was untimely filed, we also conclude that Judge Wagner was not bound by the coordinate jurisdiction rule

_____

Act. The time limitation included in [Section] 1424(a) is a special statutory limitation qualifying a newly created substantive right within the MCARE Act, *i.e.*, the right to bring an action to redress a retaliatory job action. The legislature provided no right to bring a civil action independent of the limitation.") (citation omitted).

[18] To the extent Judge Wagner claimed that a 180-day statute of limitations seems antithetical to the purpose of the MCARE Act, we point out that "[i]f the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Ursinus College*, 310 A.3d at 170-71 (cleaned up).

to follow Judge McVay's earlier decision. ***See Ivy Hill***, ***supra***. Thus, based on the foregoing, we conclude that Judge Wagner erred in denying Appellants' motion for summary judgment with respect to Dr. Brader's MCARE Act claim in Count I, and we reverse that part of her order.

*Second Issue*

In Appellants' second issue, they assert that the MCARE Act preempts Dr. Brader's common law wrongful discharge claim. "In Pennsylvania, absent a statutory or contractual provision to the contrary, either party may terminate an employment relationship for any or no reason." ***Weaver v. Harpster***, 975 A.2d 555, 562 (Pa. 2009) (citations omitted). Generally, "there is no common law cause of action against an employer for termination of an at-will employment relationship. Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." ***Clay v. Advanced Computer Applications, Inc.***, 559 A.2d 917, 918 (Pa. 1989) (cleaned up). Here, in asserting his common law wrongful discharge claim, Dr. Brader alleged that he was discharged for reporting the dangers created by Appellants' hospital policy, and that his discharge contravenes the public policy of Pennsylvania as set forth in the MCARE Act. Amended Complaint at ¶¶ 35-36.

Appellants contend that "the availability of a statutory claim under the MCARE Act precludes Dr. Brader from pursuing a common law wrongful discharge claim based on the same provision of [the] MCARE[ Act]."

- 23 -

Appellants' Brief at 31. They insist that Dr. Brader "cannot be permitted, through artful pleading, to avoid the statutory requirements for bringing suit." *Id.* at 17. They contend that, if plaintiffs are allowed to pursue a common law wrongful discharge claim based on the MCARE Act, they would be able to circumvent the MCARE Act's 180-day limitations period. Appellants' Reply Brief at 22; *see also* Dr. Brader's Brief at 34 n.9 (averring that common law wrongful discharge claims have a two-year statute of limitations).

In addition to various non-binding cases, Appellants direct our attention to *Clay*. In *Clay*, the employees sued their employer in the court of common pleas, alleging that their at-will employment was terminated because one of the employees had rebuffed sexual advances by a manager. *Clay*, 559 A.2d at 918. They sought damages for alleged wrongful discharges. *Id.* On appeal, our Supreme Court recognized that the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*, "provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination." *Id.* The Court determined that, in order to assert a claim for wrongful discharge which is cognizable under the PHRA, an aggrieved party must utilize the administrative remedies available through the Pennsylvania Humans Relations Commission ("PHRC") before asserting a cause of action in court. *Id.* Because the employees failed to pursue their exclusive statutory remedy, the Court held that they were precluded from relief. *Id.* In doing so, the Court reasoned:

- 24 -

The PHRA provides that it is an unlawful practice for any employer to discharge from employment or otherwise discriminate against an employee on the basis of sex. 43 P.S. § 955(a). A right to a remedy for discrimination in employment is established by the PHRA, 43 P.S. § 953, where it is provided, "The opportunity for an individual to obtain employment for which he is qualified … without discrimination because of … sex … is hereby recognized as and declared to be a civil right *which shall be enforceable as set forth in this act*." ([e]mphasis added). Thus, the PHRA both bestows a right to be free from discrimination based on sex, and prescribes procedures whereby the right "shall" be vindicated. The use by the legislature of the word "shall," as opposed to "may," expresses an intent to make administrative procedures under the PHRA a mandatory rather than discretionary means of enforcing the right created thereby. Clearly, too, the right in question is of purely statutory origin, for … common law rights to be free from termination of at-will employment are not generally recognized, and we have never held that at-will employment terminations arising from sex discrimination are actionable at common law. In short, the remedy that should have been invoked by [the employees] was the one provided by the PHRA.

Allowing a discharged employee to commence an action in the courts without first exhausting administrative remedies would be logically inconsistent with the legislature's having created the PHRC to function as an efficient mechanism for handling such disputes.

*Id.* at 919 (emphasis in original).

Appellants suggest that, like the employees in **Clay**, Dr. Brader had to invoke the remedies provided by the MCARE Act. **See** Appellants' Brief at 27-28. Insofar as Dr. Brader's MCARE Act claim is time-barred, Appellants advance that "[i]t is the existence of the remedy, not the success of the statutory claim, which determines preemption." **Id.** at 28 (quoting **Jacques v. AKZO Int'l Salt, Inc.**, 619 A.2d 748, 753 (Pa. Super. 1993), *abrogated on other grounds as recognized in* **Kroptavich v. Pa. Power and Light Co.**, 795 A.2d 1048, 1057 n.2 (Pa. Super. 2002)); **see also id.** at 17.

Dr. Brader, however, argues that his common law wrongful discharge claim is not preempted by the MCARE Act. In support, he cites this Court's decision in *Denton*. In *Denton*, a director of nursing at a nursing care facility was terminated by her employer, after she purportedly had started carrying on a "clean-up" campaign regarding abuses and wrongdoing she discovered at work. *Denton*, 739 A.2d at 573. The director subsequently filed an action against the employer, alleging violation of the Whistleblower Law and "wrongful termination as being against public policy[,]" among other things. *Id.* at 574. The employer filed preliminary objections stating that the director failed to state a cause of action, and the trial court dismissed the case, conveying that the director "fails to make allegations which provide her with a legal basis of recovery." *Id.* (citation omitted).

On appeal, with respect to the director's cause of action based upon the Whistleblower Law, this Court determined that the employer was a public employer for purposes of the Whistleblower Law, and that the director had stated a valid cause of action under the Whistleblower Law. *Id.* at 575-77. In addition, this Court ascertained that the director stated a valid cause of action for common law wrongful discharge, pointing to the Whistleblower Law. *Id.* at 577. We explained:

> While it is true that Pennsylvania embraces the "at will" employment doctrine, our Supreme Court has recognized an exception where an employee is discharged in violation of public policy. *Geary v. United States Steel Corp.*, 319 A.2d 174 ([Pa.] 1974). An *en banc* panel of this Court subsequently determined that the public policy exception may be applied under narrowly limited circumstances where (1) an employer requires an

employee to commit a crime, (2) an employer prevents an employee from complying with a statutory duty, or (3) a statute prohibits discharge. ***Shick v. Shirey***, … 691 A.2d 511, 513 ([Pa. Super.] 1997)[ (*en banc*)].[19]

Here, we have a statute that clearly prohibits discharge—the afore-discussed Whistleblower Law.[2]  This law represents our Commonwealth's public policy, as clearly enunciated by the legislature, that persons who report waste or wrongdoing regarding public funds should not be penalized by losing their jobs. [The director's] discharge violated this directive; thus, the third scenario set forth under ***Shick*** has been met.

> [2] We recently addressed a similar situation in ***Spierling v. First American Home Services, Inc.***, 737 A.2d 1250 (Pa. Super. 1999).  These cases are different, however, in that [the director's] claim is based on the Whistleblower Law, while Ms. Spierling's claim was based solely on the public policy exception to the at will employment doctrine.  ***See id.***  The difference in claims has led to the difference in result.

Our Court has previously considered the public policy exception to at-will employment arising under the Whistleblower Law.  In ***Krajsa v. Keypunch, Inc.***, … 622 A.2d 355 ([Pa. Super.] 1993), the appellant was discharged after reporting overcharges made by his employer under terms of a government contract for services.  We rejected [the] appellant's argument that his discharge was prohibited under the Whistleblower Law and thus wrongful, but only because we found him to be an employee of a private employer, not a public employer.  This is the distinction that we now consider.  Here, we have determined that [the director] was protected from retaliation or discharge expressly because [the employer] met the statutory definition of a public employer.  It

---

[19] Our Supreme Court reversed our *en banc* decision in ***Shick***.  ***Shick v. Shirey***, 716 A.2d 1231 (Pa. 1998).  Nevertheless, the *en banc* decision's language, listing the three circumstances in which the public policy exception has been applied, appears in other subsequent decisions issued by this Court. ***See, e.g.***, ***Dale v. Children's Hosp. of Phila.***, 223 A.3d 705, 712 (Pa. Super. 2019); ***Stewart v. FedEx Exp.***, 114 A.3d 424, 428 (Pa. Super. 2015); ***Mikhail v. Pa. Org. for Women in Early Recovery***, 63 A.3d 313, 317 (Pa. Super. 2013); ***Donahue v. Fed. Exp. Corp.***, 753 A.2d 238, 244 (Pa. Super. 2000).

was, ergo, a violation of the mandated public policy as set forth in the statute for [the employer] to fire her from her job for the reason alleged.

*Id.*

Dr. Brader argues that the **Denton** Court held that the director "could proceed with *both* a wrongful discharge claim *and* a statutory claim under the Whistleblower Law." Dr. Brader's Brief at 32 (citations omitted; emphasis in original). He argues that his "case is the same as **Denton**. [Dr.] Brader looks to [the] MCARE[ Act], which incorporates the Whistleblower Law, as a clear mandate of public policy articulated by the legislature." *Id.* at 12. He argues that because "the Whistleblower Law does not preempt wrongful discharge claims, and the MCARE Act provides the same protections and remedies of the Whistleblower Law, the MCARE Act similarly does not preempt Dr. Brader's wrongful discharge claim." *Id.* at 34 (footnote omitted). In denying Appellants' summary judgment motion, Judge Wagner agreed with this reasoning. *See* TCO at 10 (agreeing with Dr. Brader's "argument that our jurisprudence has recognized the ability to pursue concurrent statutory and common law remedies") (citing **Denton**). On preliminary objections, Judge McVay did too. *See* Order, 3/23/18 ("**Denton** … allows [illegible] action[] to proceed.").[20]

---

[20] Since **Denton**, this Court has encountered at least one other case where a plaintiff has brought claims alleging a violation of the Whistleblower Law and common law wrongful discharge based on the Whistleblower Law. *See Bailer v. Shipley Energy Co.*, 338 A.3d 1026 (Pa. Super. 2025) (determining that the plaintiff's Whistleblower Law claim failed because the employer was not a

*(Footnote Continued Next Page)*

Appellants insist that **Denton** is not controlling. Among other things, they observe that **Denton** did not directly analyze the statutory preemption issue. Appellants' Brief at 30; Appellants' Reply Brief at 13. We agree. "[P]recedent (*stare decisis*) requires us to adhere to a ruling of this Court until it is reversed either by our Supreme Court or an *en banc* panel of Superior Court." **Commonwealth v. Crowley**, 605 A.2d 1256, 1257 (Pa. Super. 1992). However, the doctrine of *stare decisis* "only applies to issues actually raised, argued and adjudicated, and only where the decision was necessary to the determination of the case. The doctrine is limited to issues litigated and necessarily decided, it does not apply to *dicta* or *obiter dicta*." **Coryell v. Morris**, 330 A.3d 1270, 1276 (Pa. Super. 2025) (*en banc*) (citation omitted). Here, while the **Denton** Court allowed both the Whistleblower Law claim and the common law wrongful discharge claim based on the Whistleblower Law to simultaneously proceed, the issue of preemption was not raised, argued, or adjudicated in that case. Thus, we do not consider **Denton** to be binding on this issue.

Setting **Denton** aside, we are persuaded by Appellants' argument that the availability of a statutory remedy under the MCARE Act precludes Dr. Brader's common law wrongful discharge claim based on the MCARE Act.

---

public body and, consequently, the common law wrongful discharge claim based on the Whistleblower Law also failed); **see also Greco v. Myers Coach Lines**, 199 A.3d 426 (Pa. Super. 2018) (involving a plaintiff who filed a claim based on the Whistleblower Law and a claim for common law wrongful discharge, however, it is unclear if the common law wrongful discharge claim was based on the Whistleblower Law).

While **Clay** involved the PHRA, which we acknowledge differs from the MCARE Act and Whistleblower Law in that it has mandatory administrative remedies, we nevertheless find it instructive. In **Clay**, the Court observed that the right in question was of "purely statutory origin[,]" the remedy that should have been invoked by the employees was the one provided by the statute, and that it would be "logically inconsistent" to allow the employees in that case to commence an action in the courts without first exhausting the administrative remedies created by the legislature. **Clay**, 559 A.2d at 919. Similarly, here, the right in question derives from the MCARE Act, and the remedy Dr. Brader invoked should have been the one provided to him by the legislature in the MCARE Act. It also would be logically inconsistent to allow Dr. Brader to bring a common law wrongful discharge claim based on the MCARE Act where his statutory claim under the MCARE Act is untimely.[21]

_____

[21] We recognize that this Court previously distinguished **Clay**, and determined that the fact that a federal statutory remedy existed **did not** preclude an employee's common law wrongful discharge claim based on that federal statute. **Field v. Phila. Elec. Co.**, 565 A.2d 1170 (Pa. Super. 1989). However, our Supreme Court later declined to extend **Field** in **McLaughlin v. Gastrointestinal Specialists, Inc.**, 750 A.2d 283 (Pa. 2000). In **McLaughlin**, the Court recognized that the **Field** Court "assumed by implication that sole reference to federal statutes could form the basis for a claim for wrongful discharge in violation of the public policy of this Commonwealth." **Id.** at 289. The Court opposed this approach, explaining that it "would essentially allow a plaintiff to reformulate a federal administrative scheme into a state private cause of action[,]" which "would then entitle a plaintiff to overcome the presumption of at-will employment and to recover compensatory damages in a court forum within this Commonwealth even if … the federal scheme provides for an administrative forum." **Id.** at 290. It further observed that the Court "has steadfastly resisted any attempt

*(Footnote Continued Next Page)*

This view aligns with our sister court's approach.[22]  The Commonwealth Court has determined that the Whistleblower Law preempts common law wrongful discharge claims based on the Whistleblower Law.  ***Javitz v. Luzerne Cnty.***, 344 A.3d 505, 521 (Pa. Cmwlth. 2025) ("[The a]ppellant's common law tort claim for wrongful termination is based on the same factual 'whistleblowing' assertions which form the basis of her Whistleblower Law claim.  Because the Whistleblower Law provides [the a]ppellant with a preemptive statutory remedy, her common law claim for wrongful termination is barred."); ***Perry v. Tioga Cnty.***, 649 A.2d 186, 189 (Pa. Cmwlth. 1994) ("Perry contends, however, that even if he was an at-will employee, his discharge was against public policy.  He contends that there is a clear public policy against discharging an employee for reporting wrongdoing.  To advance that public interest, the General Assembly enacted the Whistleblower Law to

_____

to weaken the presumption of at-will employment in this Commonwealth[,]" and opined that "[i]f it becomes the law that an employee may bring a wrongful discharge claim pursuant to the 'public policy' exception to the at-will employment doctrine merely by restating a private cause of action for the violation of some federal regulation, the exception would soon swallow the rule." ***Id.***

While ***McLaughlin*** did not expressly overrule ***Field***, it certainly disapproved of it.  Accordingly, we do not deem ourselves to be bound by ***Field***.  ***See Commonwealth v. Morris***, 958 A.2d 569, 580 n.1 (Pa. Super. 2008) ("It is well-settled that if the Supreme Court overturns this Court's ruling, this Court's decision is no longer binding precedent and the Supreme Court's ruling becomes binding precedent.") (citation omitted).

[22] ***See Dobransky v. EQT Prod. Co.***, 273 A.3d 1133, 1146 n.10 (Pa. Super. 2022) (*en banc*) (recognizing that decisions of the Commonwealth Court are not binding upon this Court, but may serve as persuasive authority) (citations omitted).

provide public employees with protection against retaliation for reporting wrongdoing. It is the sole and exclusive remedy by which such a claim can be brought against a governmental employer. However, Perry's Whistleblower cause of action is time-barred.") (footnotes omitted).

Accordingly, because the MCARE Act affords a statutory remedy to Dr. Brader, we determine that the MCARE Act preempts his common law wrongful discharge claim based solely on the MCARE Act. We therefore conclude that Judge Wagner erred in denying Appellants' motion for summary judgment with respect to Dr. Brader's common law wrongful discharge claim in Count II, as Judge McVay's earlier ruling was clearly erroneous and it would be manifestly unjust to allow Dr. Brader's common law wrongful discharge claim to advance. *See Ivy Hill*, *supra*. Appellants are entitled to summary judgment.

Order reversed. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


12/2/2025